THE STATE OF MONTANA, Acting by and through the
STATE HIGHWAY COMMISSION of the STATE OF
MONTANA, Plaintiff and Appellant, v. ROSS R. CROW,
and AGNES C. CROW, Husband and Wife and EMMET
DANHAUS, Lessee, Defendants and Respondents.

No. 10478

Submitted March 12, 1963. Decided August 12, 1963.

384 P.2d 273

K. M. Bridenstine, Helena (argued orally), for appellant.

Burke, Hibbs & Sweeney, Harwood & Galles, Billings, Hugh Sweeney, Dale F. Galles, Billings (argued orally), for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This appeal concerns two condemnation actions brought by the State of Montana, the appellant here, in the district court of Yellowstone County. The two cases were consolidated and tried together. This appeal is from a jury award for each defendant.

Defendant Crow owned an irregularly shaped tract of land in the south Billings area. The property, located within the city limits, was bounded on the west by U.S. Highway No. 10 and on the south by Calhoun Lane. An underpass which permitted traffic to cross the Northern Pacific Railroad tracks was situated almost directly across the highway from Crow's land. Traffic was necessarily slowed by this underpass and intersection adjacent thereto, and, hence, it was apparent that property fronting the highway and at a level above the roadway, as was Crow's, was valuable for commercial purposes. Realizing this, defendant Danhaus, a mobile home dealer, leased a

portion of Crow's property to display his trailers. This leased parcel is hereafter termed "Tract A".

When Danhaus initially entered Tract A it was unimproved. From his experience Danhaus had learned that a successful mobile home dealer should also have a parking area so that patrons could be encouraged to buy his trailers. Therefore, Danhaus constructed 19 "stalls" in which trailerhouses could be parked. Each stall was complete with outlets for sewer, water, electricity and natural gas, concrete patio, grass lawn, and enclosure fence. To facilitate his sales operation, Danhaus built a block building which served as his office. The venture turned out to be one of the most successful in Montana, grossing approximately $488,000 a year.

Though he entered Tract A in 1950, the most recent lease between the parties was dated October 28, 1959, and provided. for a term of ten years at a rent of $185.00 per month.

Adjacent to Tract A was another portion of Crow's property which will hereafter be called "Tract B". This parcel, not included in the lease, was unimproved except for eight trees, a ditch, fence, culvert and part of a concrete driveway which served a dwelling on still another parcel called "Tract C." All three tracts, A, B and C, were bounded on one side by Calhoun Lane. Tract C contained three dwellings, one of which was occupied by Crow and the other two of which were rented by him. The remainder of Tract C was pasture.

Pursuant to a condemnation order, the State informed both Danhaus and Crow that Tracts A and B, totaling 1.13 acres, would be taken by the State so that a new overpass complex could be constructed in that area. In addition, the grade of Calhoun Lane would be lowered nearly four feet at one point opposite the remaining property, and a new access road located approximately where Tract B was then situated would be about four feet below lawn grade. Such changes in grade were necessary parts of the overpass complex and would form a portion of the new boundary of Tract C.

After a trial the jury returned the following verdict:

"We, the Jury, find as just compensation to the defendants:

| | |
|---|---|
| For the value of the property taken | $ 96,419.00 |
| For the depreciation to the market value of the remainder of land not taken | $ 5,115.00 |
| TOTAL award to defendants | $101,534.00 |

"We apportion the total award to defendants as follows:

| | |
|---|---|
| To the landowner the sum of | $ 61,814.00 |
| To the tenant leaseholder the sum of | $ 39,720" |

The facts will be further detailed when considered in conjunction with the three specifications of error cited by the State.

First, it is contended that the trial court erred in permitting defendant Danhaus, over State's objection, to testify that the market value of the leasehold was equal to one (1) percent of the average income for a year times the number of years yet to run on the lease. Secondly, the State contends that the trial court committed error in denying the State's motions to strike such testimony.

The disputed testimony is as follows:

"Q. Mr. Danhaus, in connection with the sales portion of your operation on the Crow property, what does that property itself, not counting your own individual efforts produce for you as the owner of the lease?"

The State objected on the grounds that the question called for speculation on the witness's part and that Danhaus was not qualified to give his opinion. The objection was overruled and Danhaus answered as follows:

"A. The ground produced by sales lot, produced $4,880.00 per year.

"Q. How did you arrive at that? A. One percent of my gross sales.

"Q. Now Mr. Danhaus, do you have an opinion as to fair market value of your leasehold interest and improvements be-

fore the taking in this case, before the highway comes in and takes it? A. Yes.

"Q. What is that? A. Oh a little over $7,800.00 per year.

"Q. I mean total, what cash total do you think the whole thing is worth, the fact—A. $50,000.00.

"Q. How did you arrive at that? A. By the one percent of my gross sales from my past years, and the gross net income off the park.

"Q. Well now you said that your park rental portion netted you $3,360.00? A. Yes.

"Q. A year? A. Yes.

"Q. And the sales lot nets you $4,880.00 a year? A. Yes, that will total over $7,800.00 actually.

"Q. As I total it, $8,240.00. A. Per year?

"Q. Per year? A. Per year, yes sir.

"Q. All right now you have eight and one-twelfth years remaining on your lease as of the date of the taking in this case? A. I do have, yes.

"Q. That is from September 29, 1961, until October 28, 1969? A. '69, yes.

"Q. Now for the balance of the lease, that is $66,590 as I multiply it out? A. That is correct.

"Q. But you say that you think that it is presently worth [less than that amount], because you will be paid in one sum, now rather than over a period of time during the balance of the lease? A. That is correct.

"Q. It is now worth $50,000? A. Yes sir."

■■ The State moved to strike the testimony relating to $50,000 on the grounds that the same was based on remote and speculative evidence. The court ruled that such was a matter for cross examination. On cross Danhaus insisted that the $50,000 reflected only what the property contributed to his business. Again, the State moved to strike the whole of Danhaus' testimony because it was "incompetent, and irrelevant

toward the market value of the subject property, we are not paying for business."

In its argument the State relies on State Highway Comm'n v. Peterson, 134 Mont. 52, 328 P.2d 617, in which we held that questions relative to revenue produced from the property taken were admissible for the purpose of arriving at the market value of the property. We are cited to the following limiting language: "* * * in condemnation proceedings, such evidence is admissible for the purpose of arriving at the market value for such is a circumstance, but not a conclusive circumstance, to be shown on an issue of value." (134 Mont. at 64, 328 P.2d at 624) The State contends that since no other evidence on the value of the leasehold interest was introduced, permitting the disputed testimony to be heard was equivalent to giving it conclusive weight. We cannot agree.

The above-quoted limitation expressed in the Peterson case, means only that other evidence of market value may be introduced, and that in no circumstance can the evidence of revenue serve to foreclose other evidence on the issue of market value.

We do not think that the jury was given a mistaken impression of the law on this subject because the following instruction was given:

"Evidence concerning the revenue produced from the property taken, gross income and net revenues from the land have been received in evidence. You are instructed that such evidence is a circumstance in arriving at market value, but not a conclusive circumstance on the issue of value."

The State's third specification of error is that the trial court erred in refusing to give the following proposed instruction:

"You are instructed that the compensation, if any, due the lessee in this case is part of the value of the land and must be apportioned from the total award of compensation due all parties defendant; that in determining the compensation due the

lessee in this case, you must determine the market value of the lease, less the amounts of rent he would pay for the rest of the term of the lease as it existed before the taking of the lands for public highways, and the market value of the lease on the lands remaining after the taking of the lands for public highways, less that portion of the rents due the landowner for that portion remaining for the balance of the term of the lease; taking into consideration the terms of the lease between the lessee and landowner, the length of the lease and the uses to which the lessee has put the land if these uses are clearly spelled out in the lease." (State's proposed Instruction No. 37)

Aside from being most confusing, the proposed instruction contains a very material defect. It seems to say that the lessee is entitled to the market value of his lease *minus* the rent due in the future and *minus* the rent due for the property which remained. The lessee is entitled, according to the instruction, to less than market value of the leasehold at the time of taking. Such a position, as pointed out in defendants' briefs, cannot be reconciled with section 93-9913, R.C.M.1947, which states:

"For the purpose of assessing compensation * * * its actual value as of that date shall be the measure of compensation." We have repeatedly held that the actual value is the market value at the time of taking. See State (State Highway Comm'n) v. Peterson, supra. It is clear that defendant Danhaus, as lessee, is entitled to be reimbursed for the taking of his lease and the measure is to be the actual market value of said lease at the time of taking. No lesser measure may be permitted.

We think the following Instruction (No. 7) which was given by the court adequately expressed the proper rule:

"In determining the compensation due the lessee in this case, you must determine the market value of his lease.

"In determining the market value of the lease you may take into consideration the length of the lease, the rent to be paid, the cost or expense of operation of the business, the advantages

or disadvantages of the operation of the business in that location and the fact that the lessee is relieved of such additional expense."

Finding no prejudicial error, the judgment of the district court is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON, ADAIR and DOYLE, concur.