IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 11821

THE STATE OF MONTANA, ACTING
BY AND THROUGH THE STATE HIGHWAY
COMMISSION OF THE STATE OF MONTANA,

Plaintiff and Appellant,

vs.

FRED L. METCALF and KENNYBELLE
METCALF, husband and wife, and
CARL NELSON and JANE DOE NELSON,
husband and wife, or as a single
man,

Defendants and Respondents.

F I L E D

SEP 25 1972

Thomas J. Kearney
CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER

PER CURIAM:

IT IS ORDERED that the above Opinion promulgated on
August 8, 1972, be amended in the following manner:

On page 10, line 16 from the top of the page, strike
the following:

> "Too, McLeod was allowed to assume the correctness
> of certain facts testified to by other witnesses,
> but outside his personal knowledge as to whether
> such facts were correct. On retrial such testimony
> should not be permitted, unless the criteria set
> forth here can be met."

The petition for rehearing is denied.

Dated this 25th day of September, 1972.

No. 11821

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY
COMMISSION OF THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

FRED L. METCALF & KENNYBELLE METCALF,
husband and wife,

Defendants and Respondents.

---

Appeal from: District Court of the Third Judicial District,
Honorable Sid G. Stewart, Judge presiding.

Counsel of Record:

For Appellant:

Daniel J. Sullivan argued, Helena, Montana 59601.
James R. Beck, Highway Department, Helena, Montana 59601.

For Respondent:

Clayton R. Herron argued, Helena, Montana 59601.

---

Submitted: June 19, 1972

Decided: AUG 8 1972

Filed: AUG 8 1972

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment for defendants after a jury verdict in their favor in the district court of the third judicial district, county of Granite. Proceedings in the district court were in eminent domain following an award by commissioners appointed to assess damages as compensation by reason of appropriation of defendants' property for highway purposes. Plaintiff, State of Montana, acting by and through the State Highway Commission and hereinafter referred to as the Highway Commission, appeals and presents three issues for this Court's consideration:

1. In a condemnation action, when it is demonstrated that a valuation witness does not possess a peculiar knowledge of the property beyond that which is possessed by men generally, but is merely basing his testimony upon unsupported assumptions and conjecture, is it error for the district court not to strike the testimony of the witness?

2. In a condemnation action, is it error for the district court to refuse the following instruction:

> "You are instructed that where testimony is submitted in an effort to establish just compensation, and that such testimony is obtained from expert witnesses, then, and in that event, the opinions as expressed by the experts must be founded upon substantiated evidence, and must not be based upon unsupported assumption, conjecture or speculation."

3. When the opinion expressed by a witness is based on speculation and conjecture and is opposed by undisputed facts and the dictates of common sense, is it sufficient to support the award in this case?

The property taken by the state for construction of the Interstate highway can be broken down into two parcels. The total acquisition was some 16.5 acres. Parcel No. 1---consists

of hay land; the residence and clinic of Dr. Fred L. Metcalf, a veterinarian; and a shelter belt and landscaping around the residence. Parcel No. 2 --- consists of a two acre tract with a mound of earth containing a gypsum or gypsite deposit of some 23,000 tons.

The entire thrust of this appeal is directed to the value of parcel No. 2 and no discussion or issue is made as to parcel No. 1. As to the value of the property taken, the jury was given three possible verdicts: (a) it could set the valuation of the deposit, (b) it could have set a separate valuation on each parcel, or (c) it could have listed the value of the property taken, the damages to the remainder and the total award. The jury chose to make only a total award of $125,000, indicating no separate valuations.

The basic facts involved are not contested by either party.

The land involved is part of a twenty acre tract of land owned by Fred L. Metcalf and Kennybelle Metcalf, husband and wife, hereinafter referred to as defendants.

The taking was necessary for the purpose of constructing a four lane controlled access Interstate highway. The Metcalf property is located some 4 or 5 miles west of Drummond, Montana. The entire tract owned by defendants is south of, and adjoining on its length primary U.S. Highway No. 10. South of the tract is the main line of the Northern Pacific Railroad.

The tract is located on a slope rising upward from east to west. The lower and eastern part of the property was used for raising grass. Above that area was the residence and animal clinic of defendant, the only veterinarian in Granite County. The property around the house was landscaped and had an extensive shelter belt, almost surrounding the house. West and uphill from the improved area was the access road from U.S.Highway No. 10

- 3 -

which ran southerly from the highway, thence east near or into the Northern Pacific right-of-way, then back north to the east side of defendants' house and clinic. This road was also used by one Mr. Nelson to gain access from U.S. No. 10 to a siding of the Northern Pacific Railroad called Bradham siding.

Other than this roadway, the land west of the improved area was in its natural state and would be considered as grazing land. It contained, however, a long, low mound running approximately from U.S. Highway No. 10 in a southerly direction to, and into, the Northern Pacific right-of-way. The mound covered approximately two acres of the tract. This mound became important in this case when it was discovered that it contained and was composed of the chemical compound "gypsum" or because of the texture of the deposit, the correct terminology could be "gypsite", but hereinafter will be referred to as "gypsum".

The nature of the highway acquisition was that some 16.5 acres of the tract were taken, leaving only a strip of land about 3.5 acres in size between the constructed Interstate and the primary Highway No. 10 which was left in place as a frontage road for the Interstate. The taking took the hay land, the residence and clinic, the shelter belt and landscaping, and went through the mound containing the gypsum. The roadway to the railroad siding was preserved by means of a concrete structure under the Interstate highway.

At trial, there was disputed testimony as to the exact value of the damage inflicted by the taking of parcel No. 1. Defendants introduced testimony that placed their damages for that parcel at $70,000; the Highway Commission introduced testimony that fixed damages at $40,000. But here, on appeal, the main issue is whether or not the gypsum deposit, or parcel No. 2, was correctly valued by the jury.

To find the jury's valuation of parcel No. 2 we can only ascertain it took the valuation testimony of defendants' witness McLeod, or $80,000, as its value leaving the balance of the $125,000 award, or $45,000, as the value of parcel No. 1. On retrial, the jury should designate the award for each parcel and then the total.

The gypsum deposit was discovered by state highway geologists in 1963. The purpose of their exploration was to determine the strata of the mound insofar as it would affect highway construction. This type of deposit was not suitable base on which to construct a highway; consequently, the mound was removed and stockpiled a short distance from the highway.

The deposit of gypsum occurred naturally from the evaporation and percolation of ground waters. The two acre deposit extended downwards from ground surface at an average overall depth of 7.8 feet, and varied in depth between 3 and 12 feet. An average of about .4 of a foot of overburden existed over the deposit. The deposit contained 23,500 tons of gypsum which was 85% or better pure gypsum. It contained 21,000 tons which was 90% gypsum or better, a generally accepted commercial grade of gypsum. Gypsum, even though the percentage is less than 90%, can be used for agricultural purposes.

Agriculturally gypsum has three main purposes: (1) to treat alkali soils, (2) to provide sulphur nutrients to soils (the gypsum here involved contained 17% sulphur on the average), and (3) to condition soils to allow a greater permeation of water and soil nutrients. Gypsum is beneficial to sand-loam soils, silt-loam soils, and to loam and sandy soils generally. All of these types of soil exist in the lower valley of Granite County and in western Montana.

Defendants introduced testimony that one retail source in Hamilton, Montana, has been selling 500 to 600 tons of gypsum for agricultural purposes per year, and that in western Montana generally

the retail buyers of gypsum in bulk have been paying $10 per ton, plus shipping costs of $10 per ton. Defendants contended that if retail buyers could buy gypsum at a cheaper price, they would buy and sell more. Defendants also contended ranchers and farmers in the Drummond area must pay $22 to $26 per ton retail for sacked gypsum material and that a few weeks after the discovery of this gypsum deposit defendants sold approximately 130 tons to farmers and ranchers in the area at a price of $10 per ton, with purchasers hauling away their gypsum. These sales stopped when legal counsel advised defendants that the state of Montana presently owned the gypsum. Defendants also introduced testimony that the cost of shipping this gypsum to Hamilton would be between $5 to $7.37 per ton, depending on whether rail or road transportation was used. They further contended that a market exists for the widespread use of gypsum in western Montana, and that good public relations and good advertising work would open the market for rapidly increased sales.

Defendants argued, insofar as the gypsum property was concerned, they had established proof of its presence, quality, and quantity; and that there was a need, demand, and market available at the location of the deposit.

The Highway Commission contended the gypsum deposit contained excessive amounts of water; consequently, it would not meet commercial standards. Its expert testified the gypsum deposit contained 25% to 30% free water and the presence of free water in excess of 25% disqualified the deposit as being commercial. Another Commission expert witness testified the deposit was definitely too small to be commercially usable and the best that defendants would be able to do was to make local sales to local people. He further testified he was unaware of any deposit of this nature that had been commercially developed.

The Highway Commission alleges that a material part of the verdict was based on speculation and conjecture; therefore, the judgment should be reversed and a new trial ordered with directions that the value of the property should be established only on substantiated, factual evidence. It argues defendants did not produce a witness who, by study or experience, understood the true nature of the deposit of gypsum, so as to be qualified to testify as to its economic value for commercial purposes.

Dr. Paul B. Alexander, Ph.D., a professional geographer and consulting geologist was the defendants' principal expert witness. He is a professor at the University of Montana and at the time he testified was president of the Montana Explorations Company, a mineral exploration company. Prior to his teaching career, he was a geologist for the Anaconda Company for five years, had served as a consultant for various oil companies in California and Canada and had been self-employed. He was hired by defendants and made his study of the deposit while it was still in place. Under his direction, samples of the gypsum were taken and sent to various laboratories for valuation. He determined the deposit contained some 23,140 tons of 85% or better gypsum, and testified it had commercial value as an agricultural fertilizer.

Defendants then produced as a witness one Roy McLeod of Philipsburg, Montana. McLeod had been superintendent, assistant manager, and manager of the Trout Mining Company of Philipsburg for 18 years. Although no longer in the mining business, McLeod was still active, from time to time, as a consultant on value of mining properties. Over plaintiff's objections, McLeod testified the value of the gypsum was $80,000 for the acreage involved.

The Highway Commission contends McLeod did not have sufficient knowledge to make the estimate he did, and that he should not have been allowed to testify as to value of the deposit because he: (1) had never seen the deposit in question, (2) knew

nothing of gypsum, (3) had never studied the economic aspects of the gypsum market, (4) had no knowledge of sale of land containing gypsum in place, (5) had no knowledge of the quality standards applicable to the chemical compound to make it commercially marketable, and (6) had never investigated any gypsum deposits.

In addition to their two expert witnesses, defendants introduced testimony from individuals directly involved in agriculture who testified as to the commercial use of gypsum. County Extension Agent D. L. Becker testified as to the alfalfa acreage in the county; David Dutton, a rancher in the area who had purchased a 12 ton load from defendants, told of its use and value as a fertilizer; Clifford Nelson, a rancher and purchaser, testified as to its agricultural value; as did Ernest Wight, another rancher. All were in agreement that the deposit could be beneficially used when mixed with the clay type soil of the area.

Also, Martin Ueland of Hamilton, manager of the Bitter Root Cannery testified as to the use of gypsum in that area, its price and quantity used. Donald Graham, Corvallis, soil scientist at the Western Branch Experiment Station, testified the soil of most of the western Montana counties, particularly those counties where hay and alfalfa are important crops, would respond to the application of gypsum. He introduced slides of experiments which showed as high as a sevenfold increase in an alfalfa crop after the application of gypsum.

With the foregoing as background, we now look to the issues raised by the Highway Commission. First, we will consider the alleged error by the court in refusing to strike the testimony of witness McLeod. Admittedly both Alexander and McLeod were not gypsum experts, but both have credentials in the mining field.

Due to the type of deposit involved here, it would have been almost impossible to have found an expert who could testify as an _expert_, as to the type of deposit found. All witnesses, for both plaintiff and defendants, testified that the type of deposit found here is an unusual deposit, not often found. However, Dr. Alexander, a teaching geologist, most certainly has the necessary professional credentials to help the jury establish the value of the deposit here involved.

On rebuttal, Dr. Alexander testified, in answer to the Highway Commission's expert witness Criswell, that in evaluating a deposit such as this one two views must be considered (1) the "large company" evaluation, and (2) the "small guy" valuation. He testified that a large company would find such a deposit valueless, but that a small operator could commercially develop the deposit by using a back-hoe or prime mover to load the gypsum on trucks.

Wilbur Criswell, the expert witness for the Highway Commission, was a graduate of the Montana School of Mines with a B.S. in mining engineering. He had pursued this occupation for some 24 years and had considerable experience in locating, evaluating and securing market information on gypsum, but for the most part he was interested in rock gypsum deposits as opposed to a small "gypsite" deposit, as here involved. He felt that such a small deposit had no commercial use, at least not to the people for whom he had worked.

Reviewing the expert testimony before the jury, we find (1) Dr. Alexander testified that in his opinion the deposit had commercial value, but set no figure; (2) Mr. Criswell testified it had little or no value, but (3) Mr. McLeod testified the deposit had a value of $80,000. Mr. McLeod was allowed to testify over repeated objections by plaintiff Highway Commission, and we

find that allowing such testimony was prejudicial error necessitating reversal and a new trial.

Here, McLeod was allowed to testify and set a figure based on a hypothetical question which assumed facts not in evidence as to the market values of gypsum and the value of/the gypsum in place. Clearly, from the evidence produced and from McLeod's experience as a mining man, he could not testify as to a gypsum deposit what amount a willing buyer would pay and a willing seller would accept, neither of whom was acting under duress, which is the accepted legal definition of the fair market value of property. Certainly, his figure of $80,000 had a material effect on the verdict. The Highway Commission moved to strike the answer to the hypothetical question, but was overruled. The lengthy hypothetical question covered all of the fact material listed heretofore, and more, but it lacked the expertise needed to provide information on a willing buyer and a willing seller. Too, McLeod was allowed to assume the correctness of certain facts testified to by other witnesses, but outside his personal knowledge as to whether such facts were correct. On retrial such testimony should not be permitted, unless the criteria set forth here can be met.

Both the Highway Commission and defendants rely on two cases of this Court regarding witnesses competent to make valuation figures. State v. Peterson, 134 Mont. 52, 63, 328 P.2d 617; State Highway Comm'n v. Antonioli, 145 Mont. 411, 416, 401 P.2d 563.

In Peterson, this Court said that to qualify as a witness competent to give opinion testimony as to value, that witness must have:

> "* * * some peculiar means of forming an intelligent
> and correct judgment as to the value of the property
> in question beyond what is presumed to be possessed
> by men generally."

In <u>Antonioli</u>, the Court stated:

> "'Where the testimony submitted to the jury and relied upon by the landowners in their efforts to establish just compensation is testimony from expert witnesses, the opinions as expressed by the experts <u>must be founded upon substantiated evidence and must not be based upon unsupported assumption, conjecture or speculation.</u>'" (Emphasis added).

See: United States v. Certain Land, Etc.(D.C.Ala.1963), 214 F.Supp. 148, 150; Texas Electric Service Co. v. Vest (Tex.Civ. App. 1958), 310 S.W.2d 733; Los Angeles County v. Signal Realty Co., 86 Cal.App. 704, 261 P. 536; State Highway Comm'n v. Smith & Jesson, 141 Mont. 302, 377 P.2d 352.

Clearly, based on the holdings of the above cited two Montana cases, McLeod lacked the peculiar knowledge required to set the value estimate of $80,000.

In view of our holding on the first issue, it is unnecessary to consider appellant's second and third issues which to some extent have been covered in our discussion herein and they should not arise on retrial.

Judgment is reversed and the cause remanded to the district court for a new trial.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justices.

- 11 -