THE STATE OF MONTANA, ACTING BY AND THROUGH THE DE-
PARTMENT OF HIGHWAYS FOR THE STATE OF MONTANA,
PLAINTIFF AND APPELLANT, *v.* HAROLD F. SCHUMACHER ET
AL., DEFENDANT AND RESPONDENT.

No. 13872.

Submitted Nov. 17, 1978.

Decided Feb. 8, 1979.

Rehearing Denied March 2, 1979.

590 P.2d 1110.

Daniel J. Sullivan (argued), Helena, for plaintiff and appellant.

Larry Stimatz (argued), Butte, for defendant and respondent.

MR. JAMES DALY delivered the opinion of the Court.

This is an eminent domain action filed March 27, 1962, in Silver Bow County by the State of Montana, acting by and through the State Highway Commission, against Harold F. Schumacher and his wife, Loretta M. Schumacher, who were the owners of the land taken, and Arthur W. Schmidt, who leased a portion of the property from the Schumachers. The Schumachers reached a settlement with the State and were compensated accordingly.

Schmidt and the State were unable to reach an agreement on the value of his interest in the leased land. The dispute was submitted to a trio of condemnation commissioners who filed a report in September, 1976, awarding Schmidt $43,620 compensation for the value of his leasehold and $8,765.30 compensation for the value of his personal property destroyed or damaged for a total of $52,385-.30. The State appealed this award to the District Court. One week before the scheduled trial date, the State made a final offer to Schmidt of $5,000 plus interest expenses. This offer was rejected.

A jury trial, the Honorable James Freebourn presiding, was held April 11, 1977, in the District Court, Silver Bow County, to determine the value of Schmidt's interest. The jury returned a verdict of $14,000.

On April 29, 1977, a separate hearing was held to determine attorney fees and other costs of litigation. The District Court entered its final order dated May 16, 1977, granting Schmidt, in addition to the recovery for the verdict, attorney fees, costs, and interest computed at 10 percent (as prescribed in section 93-9913, R.C.M. 1947) from the date he surrendered possession of the leasehold. Thus, the total judgment was:

| | |
|---|---:|
| Verdict | $14,000.00 |
| Interest at 10% from 9/12/62 to 11/19/76 | 19,879.68 |
| Other Costs | 48.96 |
| TOTAL | $45,205.64 |

The State appeals from this judgment.

The property involved in this case is located approximately two miles west of Butte, Montana. The land was owned by the Schumachers and was used by them to operate a slaughterhouse and meatpacking plant. Schmidt leased a small plot of ground, 60 by 35 feet, from the Schumachers for a term of ten years beginning September 12, 1959, with an option to renew for another ten years. Schmidt constructed a 24 by 24 foot concrete block building on the plot to be used for raising maggots which he sold as fishbait. According to Schmidt, the building cost $8,755 to build, although the State contests the inclusion of $4,500 of Schmidt's own unspecified labor as a component of this cost.

Schmidt refused the State's final settlement offer of $5,000 and the case proceeded to trial. In his answer Schmidt prayed for $52,383, the total assessed and awarded by the condemnation commissioners. At trial Schmidt testified that, because of the proximity to the slaughterhouse, the highest and best use of the leased land was for raising maggots. He further testified his dollar value production of maggots for bait produced revenues of $2,100 in 1961 and $3,180 in 1962, and that the lease was worth $10,000 per year. In both years for which revenue production figures were presented, Schmidt operated only part of the year due to factors beyond his control.

The State's valuation witness valued the building at $2,950 and Schmidt's·interest in the lease at $50 for total compensation of $3,000. This witness conceded he had not valued the bait production business operated by Schmidt on the leased land.

The District Court instructed the jury that the maximum amount that could be awarded Schmidt was $52,385, the amount of the award given Schmidt by the condemnation commissioners and also the amount of Schmidt's original prayer in 1962. The minimum that could be awarded was $3,000, the amount of the State's witness' valuation. As noted above, the jury judgment of $45,205-.64 including the verdict, interest, attorney fees and other costs was rendered.

The issues raised for our consideration are:

1. In valuation of a leasehold interest in a condemnation action where the lessee testified that the value of his building on the leased ground was $8,755 and the value of the leasehold interest to him was $10,000 per year, with seven and one-half years left on the lease and an option to renew for an additional ten years, is it error for the District Court to instruct the jury that the lessee may recover not more than $52,385, which figure represented the amount of lessee's answer?

2. In a condemnation action where the sole approach to value testified to by the defendant is reproduction cost new, is it error for the District Court to allow as part of the reproduction cost personal expenses claimed by the lessee owner over and above the actual cost of producing the building?

3. Did the District Court err in finding the sum of $11,277 as a reasonable attorney fee for respondent's attorney?

4. What is the correct rate of interest to be applied in this case under section 93-9913, R.C.M.1947?

The owner of a leasehold interest in land being acquired by the State for public purposes is entitled to just compensation for the property condemned. *State Highway Comm'n v. Crow* (1963), 142 Mont. 270, 276, 384 P.2d 273; 276; *United States v. Certain Interests in Property in Cascade County* (D.Mont.1962), 205 F.Supp. 745, 748. Likewise, when the State condemns realty it is required to pay for removal of any personalty from the condemned realty and also to pay for any damage to this personalty. Section 93-9913, R.C.M.1947; *State Highway Comm'n v. City Service Co.* (1963), 142 Mont. 559, 565, 385 P.2d 604, 607.

Just compensation in such proceedings is determined by equitable principles. *Alexander v. State Highway Comm'n* (1966), 147 Mont. 367, 371-72, 412 P.2d 414, 416. The test of just compensation for property condemned is "market value", which is what a willing buyer would pay to a willing seller for the estate or interest being valued. *State Highway Comm'n v. Metcalf* (1972), 160 Mont. 164, 173, 500 P.2d 951, 955. This case, however, illus-

trates that just compensation is often difficult to measure with any degree of consensus between the condemnor and condemnee. *State Highway Comm's Tubbs* (1966), 147 Mont. 296, 301, 411 P.2d 739, 742. Value of condemned property cannot be measured solely by a formula or artificial rule where the circumstances surrounding the condemnation will not permit. *Alexander*, 147 Mont. at 372, 412 P.2d at 416; *Tubbs*, supra. Thus, while one of the most reliable tests as to the fair market value of condemned property is that of comparable sales, property which is of a type seldom exchanged, as is the case here, has no market value and therefore recourse must be had to other means of determining value such as reproduction costs, capitalization of income, or some combination of these determinants. *Tubbs*, 147 Mont. at 302, 411 P.2d at 743; *State Dept. of Highways v. Olsen* (1975), 166 Mont. 139, 144 531 P.2d 1330, 1332. As stated in *State Highway Comm'n v. Bennett* (1973), 162 Mont. 396, 391, 513 P.2d 5, 8, and reaffirmed in *Olsen*, 166 Mont. at 144, 531 P.2d at 1333.

" 'Once proper foundation has been laid as to the witness' expertise he should be permitted to give his opinion using any of the accepted means of calculating value. If is thus incumbent upon the State to bring out any weaknesses of his valuation upon cross-examination'. "

In *Crow*, 142 Mont. at 276-77, 384 P.2d at 276-77, we approve the following instruction as the proper rule for valuing a leasehold interest:

" 'In determining the compensation due the lessee in this case, you must determine the market value of his lease.

" 'In determining the market value of the lease you may take into consideration the length of the lease, the rent to be paid, the cost or expense of operation of the business, *the advantages or disadvantages of the operation of the business in that location* and the fact that the lessee is relieved of such additional expense'. " (Emphasis added.)

Thus, "the location of the land, the character of the neighborhood, and all things surrounding the property may be shown as all

336

are matters which a purchaser would consider in attempting to ascertain the market value." *State Highway Comm'n v. Peterson* (1958), 134 Mont. 52, 70-71, 328 P.2d 617, 627.

An additional component or indicator of market value which may be considered in certain cases is evidence relative to revenue produced from the property. *Bennett, 162 Mont. at 390, 513 P.2d at 8; Crow,* 142 Mont. at 275, 384 P.2d at 275-76; *Peterson,* 134 Mont. at 63, 328 P.2d at 623-24.

Schmidt's situation deserves special consideration under the above rules. Schmidt derived several advantages from the fact that his maggot ranch was located so near to the Schumachers' slaughterhouse. He had a handy and readily available supply of raw materials such as sheep lungs, with which to carry on his operation. Additionally, the smells emanating from a slaughterhouse are similar to those from a maggot ranch so Schmidt could conduct his business without offending his neighbors. He also benefited · from security measures the Schumachers had installed to protect their slaughterhouse. These advantages should be considered in valuing his leasehold interest.

Furthermore, because maggot production is a skill possessed, according to Schmidt, by very few people in the United States, this type of operation is not likely to be sold readily as to establish an actual market value by comparable sales. In such cases, as noted above, evidence of acceptable alternative means of valuing the lease, such as reproduction cost and revenue produced, is admissible.

Although the State balks at being charged for Schmidt's labor in planning and constructing the condemned building, it is clear that his expertise in designing an efficient, indoor maggot raising operation, gained over the course of 28 years in that business, would contribute significantly to enhancing the market value of the building and leasehold. Had the operation been sold, included in any sale price would undoubtedly be the value of the special improvements and process constructed in the building by Schmidt. As these improvements enhanced the market value of the

lease, their value is material to the determination of the market value. *Peterson*, 134 Mont. at 64, 328 P.2d at 624.

It is clearly established that Schmidt may testify himself to the value of the property:

"One who knows the real property in question and is familiar with the uses to which it may be put, may testify as to its market value. The witness need not know of any sales and he need not be a technical expert. (Citing cases.)" *Peterson*, 134 Mont. at 63, 328 P.2d at 623.

In *Alexander v. State Highway Comm'n* (1963), 142 Mont. 93, 110, 381 P.2d 780, 789, after quoting the *Peterson* case with approval, this Court went on to say:

"We now restate the rule to be that an owner, upon *prima facie* proof of ownership, shall be qualified to estimate in a reasonable way the value of his property for the use to which he has been putting it."

Accord *State Highway Comm'n v. Marsh* (1974), 165 Mont. 198, 203, 527 P.2d 573, 575; State Highway Comm'n v. Biastoch Meats, Inc. (1965), 145 Mont. 261, 274, 400 P.2d 274, 281. Indeed, in view of his extensive experience and the limited number of practitioners in this field, Schmidt may be the only one qualified to estimate the value of his property.

Schmidt testified the lease was worth $10,000 per year. The State chose not to cross-examine on this point. Where opportunity is afforded on cross-examination to develop facts on which a witness based his valuation of property but the opportunity was not taken, the State cannot claim prejudice on the ground that the witness had not stated the facts and data sufficiently so the injury could weigh the facts. *Biastoch Meats*, 145 Mont. at 275-76, 400 P.2d at 281-82. This testimony went to the jury undiluted; its weight was for the jury to determine. *Bennett*, 162 Mont. at 390, 513 P.2d at 7-8.

During trial the State went to great lengths to show that the building housing Schmidt's operation was not located on the land described in the lease. On appeal the State argues that the terms of

the lease are irrelevant to the valuation of Schmidt's interest. We fail to see the logic of the State's argument.

At the time of condemnation, Schmidt had seven and one-half years left on the lease with an option to extend the lease for ten additional years. Applying his testimony that the lease was worth $10,000 per year over the course of the lease, we calculate that the lease had a value to Schmidt of at least $75,000 and at most $175,-000. On the basis of this evidence, it was not error for the District Court to insert $52,385 as the maximum amount allowable as compensation to Schmidt in its instruction to the jury.

The only evidence to contradict Schmidt's valuation was that of the State's appraiser, who, admitting he had not attempted to value Schmidt's maggot operation, estimated the value of the lease at $50 and the reproduction cost of the building at $2,950. Clearly, the jury weighed and balanced these conflicting valuations in arriving at their verdict of $14,000. We have long followed the rule in eminent domain proceedings that the jury findings will not be disturbed on appeal unless they are so obviously and palpably out of proportion to the injury done as to be in excess of just compensation. *State Department of Highways v. Lahman* (1977), 172 Mont. 480, 565 P.2d 303, 306; *Biastoch Meats*, 145 Mont. at 276, 400 P.2d at 282. On the record before us, we find no such obvious and palpable error as to the jury valuation of Schmidt's interest.

We likewise find no error in the calculation of the attorney fee awarded by the District Court to Schmidt's attorney. The rule that a contingency fee contract between client and attorney is not controlling in demonstrating the reasonableness of an attorney fee, *State Highway Comm'n v. Marsh* (1978), 175 Mont. 460, 575 P.2d 38, 43, is not directly applicable here, even though the fee awarded is, in fact, one-third of the sum of the verdict and interest awarded Schmidt as per their contingency fee contract. The reason for the rule is partially to guard against unreasonably high percentages in contingency fee contracts where the client is probably not going to pay the fee anyway. *Rauser v. Toston Irrigation District* (1977), 172 Mont. 530, 565 P.2d 632, 641.

In the instant case, however, Schmidt's attorney presented evidence that he had spent over 300 hours on the case which, if multiplied by his normal fee of $40 per hour, should yield something over $12,000 in fees. This evidence would tend to support a higher fee than the $11,277 awarded by the District Court and indicates that the contingency fee contract is reasonable.

The foregoing is not to de-emphasize the factors listed in *First Security Bank v. Tholkes* (1976), 169 Mont. 422, 429-30, 547 P.2d 1328, 1332. These remain the bases of any award. We merely find that, weighed against these factors, the evidence presented to the District Court supported its attorney fee award.

Finally, the District Court calculated the interest owed by Schmidt by the State at the rate of 10 percent per annum for the entire period from 1962, the time of the condemnation, until 1976. In *State Highway Comm'n v. Marsh* (1978), 175 Mont. 460, 575 P.2d 38, we held that the proper method of calculating interest in these cases was to apply the 6 percent interest rate for all periods before July 1, 1975, the date the amendment increasing this interest rate from 6 to 10 percent became effective, and to apply the 10 percent interest rate thereafter. In other words, it is error to apply the 10 percent interest rate retroactively to periods before July 1, 1975. We see no reason for now modifying or reversing this equitable rule. Therefore, the case is remanded for determination of the proper amount of interest due.

The judgment of the District Court that $14,000 is just compensation for Schmidt's leasehold interest and that $11,277 is a reasonable attorney fee is affirmed. The cause is remanded to the District Court for recalculation of the interest due Schmidt on his judgment as directed in this opinion.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON and SHEEHY concur.