DA 06-0733

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 362

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE MONTANA DEPARTMENT OF
TRANSPORTATION,

      Plaintiff and Appellant,

  v.

AMERICAN BANK OF MONTANA, a Montana
corporation,

      Defendant and Appellee.

| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause No. DV 04-474B<br>Honorable Katherine R. Curtis, Presiding Judge |
| --- | --- |

COUNSEL OF RECORD:

      For Appellant:

            Edward G. Beaudette, Lyle Manley, Timothy W. Reardon;
            Montana Department of Transportation, Helena, Montana

      For Appellee:

            A. Clifford Edwards, Triel D. Culver; Frickle, Anner-Hughes &
            Culver, Billings, Montana

                        Submitted on Briefs:  August 9, 2007

                                 Decided:  October 29, 2008

Filed:

                               _____
                                       Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 The State of Montana, acting by and through the Montana Department of Transportation (MDOT), appeals from the post-judgment order entered by the Eleventh Judicial District Court, Flathead County, awarding American Bank of Montana (American Bank) $116,739.53 in "necessary expenses of litigation," including attorney fees. We reverse and remand.

¶2 The restated issue on appeal is whether the District Court erred by applying jurisprudential factors, rather than the plain language of § 70-30-306(2), MCA, in determining reasonable and necessary attorney fees in this condemnation case.

## BACKGROUND

¶3 In July of 2004, MDOT initiated a condemnation action regarding a portion of American Bank's real property. After a hearing in 2005, the District Court dismissed MDOT's complaint with prejudice and awarded American Bank all necessary expenses of litigation. It ordered American Bank to submit a request for reasonable and necessary attorney fees, expert witness fees, exhibit costs, and court costs.

¶4 American Bank did not submit a request, but filed affidavits of two of its attorneys "in support of award of attorney fees and necessary expenses of litigation." Triel D. Culver's affidavit stated, among other things, that a reasonable hourly rate for his work and that of attorney Cliff Edwards was $250, and a reasonable hourly rate for work performed by attorney Lori Armstrong was $125. Edwards' affidavit stated his hourly rate was $450, but he lowered it to $250 to be consistent with what other lawyers were charging in eminent

2

domain cases in Flathead County. Edwards attached copies of the affidavits of local attorneys Frank B. Morrison, Jr., and Dale L. McGarvey regarding attorney fees for Wade J. Dahood's services in another Flathead County eminent domain case. Those affidavits addressed the affiants' hourly rates and Dahood's experience, skill and background.

¶5 MDOT filed a motion to retax costs, objecting to American Bank's requested attorney fees. Relying on § 70-30-306(2), MCA, MDOT asserted American Bank's requested hourly rates exceeded the "customary hourly rates" for an attorney's services in Flathead County, which MDOT posited were $150 or $175. In support, MDOT submitted affidavits of local attorneys Marshall Murray and Richard DeJana. American Bank opposed MDOT's motion, and submitted the affidavits of Douglas Wold and Sean Frampton—also attorneys in Flathead County—addressing the complexity of the case and Edwards' and Culver's respective experience and skill, as well as the City of Whitefish's stipulation to a $250 hourly rate in a different condemnation case. MDOT replied.

¶6 The District Court held a hearing, at which DeJana and Murray testified in support of a $150 hourly rate. No other witnesses testified. The District Court subsequently entered an order stating that—absent any challenge to the number of hours at issue, the hourly rates for Armstrong's work or any costs—the sole issue in MDOT's challenge to American Bank's requested $250 hourly rate for work by Edwards and Culver was the meaning of the phrase "customary hourly rates" in § 70-30-306(2), MCA. Rejecting MDOT's argument that § 70-30-306(2), MCA, sets forth a unique standard, the District Court applied jurisprudential factors and awarded fees based on hourly rates of $250 for Edwards, $200 for Culver, and

3

$125 for Armstrong.  MDOT appeals.

## STANDARD OF REVIEW

¶7      We review a district court's interpretation and application of a statute for correctness. *See Polasek v. Omura*, 2006 MT 103, ¶ 8, 332 Mont. 157, ¶ 8, 136 P.3d 519, ¶ 8 (citation omitted).

## DISCUSSION

¶8      *Did the District Court err in applying jurisprudential factors, rather than the plain language of § 70-30-306(2), MCA, in determining reasonable and necessary attorney fees in a condemnation case?*

¶9      In various types of cases, non-exclusive factors apply in determining the amount of "reasonable" attorney fees.  These factors include the amount and character of the legal services rendered; the labor, time and trouble involved; the character and importance of the litigation; the amount of money or the value of the property to be affected; the professional skill and experience called for; the attorney's character and standing in the profession; and the results secured.  *See e.g. James Talcott Constr., Inc. v. P & D*, 2006 MT 188, ¶ 63, 333 Mont. 107, ¶ 63, 141 P.3d 1200, ¶ 63 (citation omitted); *Chase v. Bearpaw Ranch Assn.*, 2006 MT 67, ¶ 38, 331 Mont. 421, ¶ 38, 133 P.3d 190, ¶ 38 (citations omitted).

¶10     These jurisprudential factors derive from *Forrester & MacGinniss v. B & M Co.*, 29 Mont. 397, 409, 74 P. 1088, 1093 (1904), as reflected in *Crncevich v. Georgetown Recreation Corp.*, 168 Mont. 113, 119-20, 541 P.2d 56, 59 (1975), and *First Security Bank of Bozeman v. Tholkes*, 169 Mont. 422, 429-30, 547 P.2d 1328, 1332 (1976).  Several cases setting forth the factors cite to *Crncevich*, *Tholkes* or both.  *See e.g. Plath v. Schonrock*, 2003

4

MT 21, ¶ 36, 314 Mont. 101, ¶ 36, 64 P.3d 984, ¶ 36; *Weinberg v. Farmers State Bank*, 231 Mont. 10, 35, 752 P.2d 719, 735 (1988).

¶11    Article II, Section 29, of the Montana Constitution and § 70-30-305(2), MCA, provide that a prevailing private property owner in condemnation litigation must be awarded "necessary expenses of litigation." "Necessary expenses of litigation . . . mean reasonable and necessary attorney fees, expert witness fees, exhibit costs, and court costs." Section 70-30-306(1), MCA. "Reasonable and necessary attorney fees are the customary hourly rates for an attorney's services in the county in which the trial is held. Reasonable and necessary attorney fees must be computed on an hourly basis and may not be computed on the basis of any contingent fee contract." Section 70-30-306(2), MCA. The 1977 Legislature enacted the precursor to § 70-30-306(2), MCA, and the statute has been amended only once in a manner not relevant here. Sec. 1, Ch. 48, L. 1977; Sec. 71, Ch. 125, L. 2001.

¶12    This Court cited to *Crncevich* or *Tholkes* in relation to the *Forrester* factors in two eminent domain cases decided after the 1977 enactment of § 70-30-306(2), MCA. Both *State v. Schumacher*, 180 Mont. 329, 590 P.2d 1110 (1979), and *Rauser v. Toston Irrigation Dist.*, 172 Mont. 530, 565 P.2d 632 (1977), arose prior to the July 1, 1977 effective date of the 1977 statute. In *Rauser*, 172 Mont. at 543-44, 565 P.2d at 640, we merely noted the 1977 statute's existence and applicability to future cases. In *Schumacher*, 180 Mont. at 338-39, 590 P.2d at 1116, we did not mention the 1977 statute in our discussion of attorney fees. Accordingly, we conclude those cases have no bearing on the issue presently before us.

¶13    Having so concluded, we address as an issue of first impression the standard for

determining "reasonable and necessary attorney fees" in condemnation litigation pursuant to § 70-30-306(2), MCA. MDOT argues this statutory provision for eminent domain cases is unique in that it specifically defines the basis for an attorney fee award vis-à-vis its "customary hourly rates for an attorney's services in the county in which the trial is held" language. Advancing dictionary definitions, MDOT further asserts that "reasonable and necessary attorney fees" under § 70-30-306(2), MCA, are based on the usual hourly rates for any attorney in the county. MDOT's argument apparently is not, however, that attorney fees in an eminent domain case must be based on one randomly-selected attorney's rates—or, in other words, a "pick an attorney, any attorney" approach. Nor, as mentioned above, does MDOT challenge the number of hours at issue here. MDOT's argument is that the District Court erred in interpreting § 70-30-306(2), MCA, to require consideration of the jurisprudential *Forrester* factors, including the character of the litigation and the skill and reputation of the attorney.

¶14    In construing a statute, the office of the judge is simply to ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted or to omit what has been inserted. Section 1-2-101, MCA; *In re Montana License*, 2008 MT 165, ¶ 32, 343 Mont. 331, ¶ 32, 184 P.3d 324, ¶ 32 (citations omitted). We conclude the plain "customary hourly rates" language of § 70-30-306(2), MCA, means that "reasonable and necessary attorney fees" are to be computed in a condemnation case based on hourly rates typical or common for a non-specific attorney's services in the county in which the trial is held. Thus, we further conclude the District Court erred in applying the *Forrester* factors.

6

¶15 We acknowledge, in this regard, the District Court's extensive analysis leading to its conclusion that the *Forrester* factors apply in eminent domain cases. First, construing the "customary hourly rates" language of § 70-30-306(2), MCA, the court determined that language was intended merely "to legislate the basis for fees to be awarded (hourly) and the locale for the determination of those fees (the county in which the trial is held)." We must presume the Legislature would not pass useless or meaningless legislation. *Mont. Shooting Sports Assn. v. Dept. of FWP*, 2008 MT 190, ¶ 15, 344 Mont. 1, ¶ 15, 185 P.3d 1003, ¶ 15 (citation omitted). Thus, we reject the District Court's interpretation, because it would render the statutory term "customary" meaningless, and it would render the second sentence of § 70-30-306(2), MCA—providing that attorney fees "must be computed on an hourly basis"—redundant and useless.

¶16 Apparently in the alternative to its plain language analysis, the District Court also relied on *State ex rel. DOT v. Slack*, 2001 MT 137, 305 Mont. 488, 29 P.3d 503, for the proposition that this Court has adopted a "market rates" standard for attorney fee awards in condemnation cases akin to that applied in determining "reasonable" attorney fees in federal civil rights cases. The question before us in the portion of *Slack* referenced by the District Court, however, was whether § 70-30-306, MCA, attorney fees could be enhanced for delay between the attorney fee rate at the time the services were performed and the time the determination was made. In that context, we concluded that neither § 70-30-306(2), MCA, nor any jurisprudence of which we were aware precluded an enhancement for delay. We also analogized to *Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S. Ct. 2463, 2469 (1989), in

7

which the United States Supreme Court determined that attorney fees awarded under a federal civil rights statute were to be based on the "market rates" for services rendered, and enhancement for delay was authorized. *Slack*, ¶¶ 23-25. We did not address in *Slack* whether the plain language of § 70-30-306(2), MCA, sets forth a different standard for determining attorney fees in condemnation cases from the jurisprudential *Forrester* factors applied in other types of cases.

¶17 The District Court's final relevant determination was that—given the variety of attorneys' services, hourly rates and levels of skill, experience and reputation—awarding fees based on an average hourly rate for all services by all attorneys in the county "would be illogical, unfair and, probably, impossible." We appreciate the District Court's practical concerns and do not disagree. Our function here, however, is to construe a statute in accordance with its plain language, not to insert what has been omitted or to omit what has been inserted. Section 1-2-101, MCA; *In re Montana License*, ¶ 32.

¶18 Section 70-30-306(2), MCA, does not mention "average" rates, and we decline to insert that term into the statute. As set forth above, we construe the plain language of the phrase "customary hourly rates" in § 70-30-306(2), MCA, to require a determination of typical or common hourly rates for a non-specific attorney's services in the county where the trial is held.

¶19 We need address American Bank's arguments regarding the jurisprudential factors very briefly. Its estoppel assertions are unsupported by authority. Its contentions regarding Article II, § 29 of the Montana Constitution are not properly before us, because neither party

has challenged the constitutionality of § 70-30-306(2), MCA. Finally, American Bank's characterization of MDOT's statutory interpretation argument as a "backdoor" attempt to challenge findings and re-litigate facts is simply incorrect. We decline to address these arguments further. For reasons discussed above, we conclude the District Court erred by applying jurisprudential factors in determining attorney fees pursuant to § 70-30-306(2), MCA.

¶20 We now turn to the appropriate resolution of this case. In this regard, we agree with the District Court's determinations to the effect that American Bank's prehearing affidavits and Murray's testimony were largely based on the jurisprudential *Forrester* factors—which, as discussed above, are inapplicable to a § 70-30-306(2), MCA, determination. We also observe MDOT's assertion, in the alternative to its statutory argument addressed above, that American Bank's prehearing affidavits are not competent evidence on which an attorney fee award could be based, in light of cases such as *Pumphrey v. Empire Lath and Plaster*, 2006 MT 255, ¶ 19, 334 Mont. 102, ¶ 19, 144 P.3d 813, ¶ 19. On the other hand, we note American Bank's factually accurate response that MDOT failed to raise this argument in the District Court, as well as its assertion without citation to authority that this failure constitutes waiver.

¶21 Instead of trying to fashion a remedy based on these appellate arguments and an arguably inadequate record, we conclude the best way forward is to remand to the District Court for further proceedings to determine attorney fees pursuant to § 70-30-306(2), MCA. We are confident, in this regard, that the District Court will—as it has to this point—fully

address any arguments presented on remand.

¶22 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ BRIAN MORRIS


Justice Patricia O. Cotter dissents.

¶23 I respectfully dissent. I think the Court over-parses the issue before us, and deprives the district courts of the latitude needed to arrive at a "customary hourly rate" in this type of case. I would conclude that the District Court reached the correct result and therefore would affirm.

¶24 As noted above at ¶ 11, § 70-30-306, MCA, defines "reasonable and necessary attorney fees" as "the customary hourly rates for an attorney's services in the county in which the trial is held." The majority concludes that this language limits a district court to considering <u>only</u> "hourly rates typical or common for a non-specific attorney's services in the county in which the trial is held." Opinion, ¶ 14. I disagree. However, assuming for the sake of argument that the *Forrester* factors should not have been considered, there was, in my judgment, sufficient evidence presented to support the court's ruling even *without* consideration of these factors.

10

¶25 The evidence included multiple affidavits from attorneys practicing in Flathead County for many years. In fact, together with the affidavits of the two attorneys representing American Bank, affidavits of four local attorneys were presented, all of which supported a rate of $250 as fair, reasonable and customary. Additionally, the court received a stipulation by the City of Whitefish that a local attorney's hourly rate in a condemnation case was $250. Had the court simply considered this evidence alone, it was enough to support a determination that the charged fees were customary, and "reasonable and necessary."

¶26 However, I disagree that it was error for the District Court to consider the *Forrester* factors. The words "reasonable and necessary" in § 70-30-306(1), MCA, are not displaced by the requirement of "customary fees" in § 70-30-306(2), MCA. A determination of "reasonable and necessary" mandates considering the circumstances involved. The circumstances of the case before us illustrate this necessity. Notably, the District Court concluded that the affidavits supported an hourly fee of $250 for attorney Edwards after considering, among other things, Edwards' area of expertise and the length of his legal career. Conversely, relying on the same factors, the court determined that attorney Culver's length of experience did <u>not</u> warrant the "customary hourly rate" appropriate to a more senior attorney and therefore awarded a lesser fee for Culver's services. Without explanation, but presumably based on the same considerations, the court awarded a still lesser hourly fee to attorney Armstrong. I would conclude the court did so properly, based upon the circumstances before it. Had the court instead determined that "reasonable and necessary" required only the consideration of the customary hourly fees in the county, it

11

could have conceivably—based upon the affidavits presented—awarded $250 per hour for all three attorneys, regardless of their levels of experience, expertise or skill. This would not be reasonable or just.

¶27 The "customary hourly rate" for a second-year Flathead County attorney in a condemnation case would be markedly lower than the "customary hourly rate" for an attorney with thirty years experience practicing in the same case and county. Because this is so, a determination of what is "customary" should not be made in a vacuum. Context is needed. In our ruling today, we effectively deprive the district courts of resort to that context, and in so doing, assure an arbitrary result rather than one grounded in the realities of the particular case.

¶28 For the foregoing reasons, I would affirm the decision of the District Court. I therefore dissent.

/S/ PATRICIA COTTER