No. 12794

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

-------------------

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE DEPARTMENT OF HIGHWAYS OF
THE STATE OF MONTANA,

                    Plaintiff and Appellant,

        -vs-

ARTHUR J. OLSEN and FLORENCE O. OLSEN,
husband and wife, and EUGENE G. HOLMES
and EVELYN HOLMES, husband and wife, and
ORION HEATH and ESTHER HEATH, husband and
wife, as Contract Purchasers,

                    Defendants and Respondents.

-------------------

Appeal from:  District Court of the Fourth Judicial District,
              Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellant:

        Daniel J. Sullivan argued, Helena, Montana

    For Respondents:

        Koch & McKenna, Hamilton, Montana
        Thomas P. Koch argued, Hamilton, Montana
        Boone, Karlberg & Haddon, Missoula, Montana
        William T. Boone argued, Missoula, Montana

    For Amicus Curiae:

        John Carl argued, Butte, Montana

-------------------

                            Submitted:  January 10, 1975

                            Decided:  FEB -5 1975

Filed:  FEB -5 1975


                    _Thomas J. Kearney_
                                    Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

These appeals arise from a condemnation action brought by the State Department of Highways in the district court, Ravalli County. Defendants, Orion and Esther Heath, the landowners, appeal from the district court's refusal to award them their alleged "expenses of litigation". The State crossappeals from the judgment awarding $68,000 as just compensation for the taking.

Heaths owned and operated a "mom and pop" grocery store in Florence, Montana. The store, with living quarters attached, is situated on a lot fronting on U. S. Highway 93. State Department of Highways' plan for improving that highway involved widening of its right-of-way, necessitating a taking of part of the lot owned by the Heaths. The State offered the owners $3,460 for the 31 1/2 foot strip fronting on the highway, which offer was refused. Following the refusal, the State filed this condemnation action in June, 1972.

The landowners admitted the necessity of the taking, but disputed the extent of the taking and the amount of just compensation offered by the State. A jury trial was held in January 1974, for a determination of these issues. During the course of trial, the State admitted that it had erred in its previous determination of the extent of the taking. It conceded the strip to be condemned included the sanitary facilities of the lot and that the taking would destroy the utility of the store and attached residence.

As a result of this new position, the State's appraiser testified the value of the taking, using the "market data" valuation method, was $39,033. The landowners' appraiser, using a "capitalization of income" method, valued the taking at $86,500. The landowners did not testify as to the value of the taking.

- 2 -

The jury returned a unanimous verdict of $68,000, and judgment was entered thereon. The landowners then moved for an award of the "necessary costs of litigation" under the provisions of section 93-9921.1, R.C.M. 1947. The amounts requested were:

| (a) | Court fees | $18.00 |
| (b) | Appraiser's fee | $2,300.00 |
| (c) | Architect's fee | $100.00 |
| (d) | Engineer's fee | $532.50 |
| (e) | Sanitarian's fee | $200.00 |
| (f) | Attorneys' fees | $16,150.00 |

The State moved to retax costs: the motions were jointly heard, evidence was received, and the court entered an order denying all of the costs except the $18 court fees.

The landowners appeal that order and the State crossappeals from the judgment. Considered together, the issues raised are:

(1) Is a "capitalization of income" valuation appropriate on these facts?

(2) If so, was that method properly applied to the facts presented?

(3) Are defendants entitled to recovery of "necessary costs of litigation" under the provisions of section 93-9921.1, R.C.M. 1947?

The first two issues are raised by the State, while the landowners present the third for consideration. Amicus curiae also briefed and argued the third issue.

The State's first argument is essentially that income capitalization should not be used to value damage to business property. While admitting that method is appropriate in cases involving agricultural or rental property, it argues that business property should not be similarly valued because the income it produces depends more on the skill of the owner-operator than on the productivity of the property.

The use of income capitalization in eminent domain

valuations is not new in Montana. The admissibility of income evidence was recognized in State v. Peterson, 134 Mont. 52, 328 P.2d 617, although capitalization of that income was not discussed. However, Peterson was cited in State Highway Comm'n v. Heltborg, 140 Mont. 196, 369 P.2d 521, for the proposition that income can be used in determination of market value. Heltborg affirmed an award based on capitalization of income derived from agricultural property.

Caveats were attached to the use of this method in State Highway Comm'n v. Bare, 141 Mont. 288, 301, 377 P.2d 357, where we said:

> "While we do not reject the method in all cases, we believe for future guidance in eminent domain cases, the capitalization of income method should be carefully scrutinized even where it may be appropriate as one of the tools of the judicial workshop. We are aware that in some instances, where no comparable sales evidence is available or where it is shown to be not applicable for many reasons, the only usable method is the capitalization method. However, its use must be based on a foundation which minimizes to the extent possible conjecture and uncertainty."

In Bare we reversed the district court because the foundation for the use of the method involved an unacceptable amount of uncertainty and speculation. A similar result was reached in State Highway Commission v. Palin, 160 Mont. 486, 503 P.2d 524, for the same reasons.

Our most recent encounter with the method, apart from the instant case, was State Highway Comm'n v. Bennett, 162 Mont. 386, 513 P.2d 5, 8, 30 St.Rep. 702, where we approved the use of the method in a condemnation involving rental cabins and a service station. Bennett, and others heretofore cited, gives Montana a different rule from that urged by the State and suggested by 5 Nichols on Eminent Domain §19.3.

Income capitalization is an appropriate valuation method in cases where it entails less conjecture and uncertainty than

alternative methods. Its applicability is determined less by the type of property taken than by a comparison of the relative certainty resulting from the use of the various methods. While some types of property may lend themselves to a particular method, the appropriateness of any given method must necessarily hinge on the facts of the case being tried.

The alternative methods of valuation were presented to the jury in the instant case. The landowners' appraiser discussed three: market data, reproduction cost, and income capitalization. He rejected the first two as inapplicable here, and valued the taking at $86,500 by using the income capitalization method. The State's appraiser also discussed the same three methods, rejecting the last two, and valuing the taking at $39,033 by applying the market data method.

Each of the experts pointed out the flaws he felt to be inherent in the other's approach. Each was rigorously cross-examined by opposing counsel. No suggestion was made that the witnesses were unqualified to express an opinion. The dispute went solely to the applicability of the methods proposed.

Under these facts we find Bennett to be controlling. Dealing with a similar problem there, we said:

> "Once proper foundation has been laid as to the
> witness' expertise he should be permitted to
> give his opinion using any of the accepted means
> of calculating value. It is thus incumbent upon
> the State to bring out any weaknesses of his
> valuation upon cross-examination."

The foregoing discussion responds to both issues raised by the State. The use of the income capitalization method clearly was permissible under the authorities cited. The concern over the proper application of this method goes to the weight of the expert's testimony, not to its admissibility. Bennett, supra. Our review of the record here finds substantial evidence supporting the verdict and judgment. Accordingly, the judgment of the

district court is affirmed.

The final problem presented concerns the district court's denial of the landowners' alleged "necessary costs of litigation". The principal challenge concerns the applicability of section 93-9921.1, R.C.M. 1947, to an action pending when that statute became effective.

The State's complaint was filed in June 1972. At that time, awardable costs were determined under section 93-9921, R.C.M. 1947, which provided:

> "Costs may be allowed or not, and, if allowed may be apportioned between the parties on the same or adverse sides, in the discretion of the court."

The costs provided by that statute did not include expert witness or attorney fees. State Highway Comm'n v. Heltborg, 140 Mont. 196, 369 P.2d 521; Tomten v. Thomas, 125 Mont. 159, 232 P.2d 723, 26 ALR 2d 1285.

While this action was pending, section 93-9921 was repealed and section 93-9921.1, R.C.M. 1947, was substituted. It provides, in pertinent part:

> " * * * In the event of litigation, and when the private property owner prevails, by receiving an award in excess of the final offer of the condemnor, the court shall award necessary expenses of litigation to the condemnee."

The title of the 1973 legislative act indicates section 93-9921.1 was designed to implement Article II, Section 29, of the 1972 Montana Constitution. Chapter 453, Laws of 1973.

The new statute and the new constitution went into effect during the time this suit was pending. The language of the new provision is clearly broader than the former law, and "necessary costs of litigation" includes expert witness and attorney fees. The Constitutional Convention notes appended to Art. II, Sec. 29, of the 1972 Montana Constitution, recite:

> "Retains provisions in 1889 constitution
> [Art. III, sec. 14] on eminent domain and expands
> its protection by guaranteeing that a property
> owner who goes to court and is awarded more money
> than offered for his property being condemned
> will be reimbursed for the necessary expenses of
> the lawsuit (such as appraiser and attorneys fees)."

It thus becomes necessary to determine whether or not the new law applies to an action pending, when the right to expanded costs became operative. The State argues the question of applicability is controlled by the transition schedule which governs the change from the 1889 to the 1972 Constitution. Section 3 of that schedule provides:

> "Any rights, procedural or substantive, created
> for the first time by Article II shall be pros-
> pective and not retroactive."

Since prior to the adoption of the 1972 Constitution and its implementing legislation there was no right to attorney and appraiser' fees as an element of costs, the State argues that the new provisions are prospective only and cannot be applied to suits commenced under the old law.

We disagree. While the new statutory and constitutional provisions are clearly prospective in application, that does not prevent their application here. The right to necessary costs of litigation provided by section 93-9921.1, R.C.M. 1947, does not arise when the suit is filed, but vests only when the private property owner prevails, securing a verdict higher than the State's final offer. The right here vested after the statutory and constitutional provisions were operative. Their prospective application thus encompasses the present case.

Our holding here is in accord with the general rule, recognized by case law and the authorities. See, e.g. Fellers v. State Highway Commission, 214 Kan. 630, 522 P.2d 341; State, Department of Mental Health v. Cholewinsk, 27 Conn. Sup. 286, 236 A.2d 339; 20 C.J.S. Costs §3(b); Annotation, 96 A.L.R. 1428. We

do not find that rule varied by the constitutional transition schedule here. That schedule merely makes the applicability of these costs prospective. As the landowners' right to these costs did not arise until they prevailed at trial, the date of judgment is controlling. The statute and constitutional provisions authorizing increased costs were both in effect at that time.

The State further contends that, even if section 93-9921.1 is applicable to this case, costs cannot be allowed thereunder because there was no "final offer" by the State--a condition precedent to an award of costs.

Section 93-9912, R.C.M. 1947, requires the district court judge to appoint "condemnation commissioners" who are to assess the value of the taking. That assessment can be appealed under the provisions of section 93-9915, R.C.M. 1947. These procedures were not followed here, and the State argues section 93-9921.1, R.C.M. 1947, speaks of a final offer only in terms of the offer it requires to be made within thirty days of the perfecting of the appeal from the commissioners' assessment.

The record certified from the district court discloses nothing concerning why these procedures involving a commissioners' assessment were not followed. The State's appellate brief alludes to a waiver of this procedure, which we assume to be the case.

The question thus presented is novel. The district court, apparently with the consent of the parties, failed to follow a mandatory statutory procedure--namely appointing commissioners and supervising their assessment. Arguably, this defect was cured by the subsequent district court trial at which the issues which should have been presented to the commissioners were determined. Now the State seeks to avoid its statutory liability for necessary costs of litigation by asserting that it never made a final offer within the meaning of section 93-9921.1, R.C.M. 1947, and that it

was not required to submit a final offer because no commissioner's hearing was held.

To adopt such a theory here would contravene the intent of the statute and would violate the constitutional mandate. Article II, Section 29, 1972 Montana Constitution requires that a landowner be compensated for necessary expenses of litigation if he prevails. This constitutional directive cannot be frustrated by inadvertent or intentional violations of statutory procedure.

There is no statutory prohibition against the State's making an offer at any time prior to trial. Section 93-9921.1, R.C.M. 1947, provides, in pertinent part:

> "The fact that an offer is made but not accepted does not preclude a subsequent offer."

Thus, the State could have made an offer at any time prior to trial, whether or not a commission hearing was held. Accordingly, we find the $3,460 offer made prior to the filing of this action was the State's final offer under the facts here. Since the ultimate award was far in excess of that offer, the landowners are entitled to an award of their necessary expenses of litigation.

The State also challenges the necessity of some of the items of expense submitted in the landowners' motion for costs. Without detailing the specific claims alleged by the State, we note that they center around the charge that fees resulting from exhibits and witnesses not produced at trial should not be allowed.

We have reviewed the entire record, including the hearing on the motion for costs, and find that the items claimed as necessary were made unnecessary only by the State's admission at trial that the taking included the sanitary facilities. The challenged expenses were incurred when the landowners prepared to prove that very fact. Although the State's admission relieved the landowners of the necessity of proof, it came too late to avoid liability for expense incurred in preparing that proof.

- 9 -

The proceedings at the Constitutional Convention make it abundantly clear that it intended by Article II, Section 29 to make the landowner whole in eminent domain proceedings to the extent that the amount of the judgment for the taking of his land and improvements would be a "net recovery" with expenses of litigation assessed against the State, where the landowner prevailed.

The large award of attorney fees as a necessary expense of litigation is the result of the peculiar facts of this case. Because of an error, the State originally did not include the sanitary facilities in the taking which resulted in an extremely low offer of only $3,460 to the landowners. At trial the State admitted its error and appraised the "take" at $39,033. However, the only offer made to the landowners was the original amount offered, $3,460. The jury fixed the award to the landowners at $68,000, a difference of $64,540. The contract between the landowners and their attorneys provided for an attorneys' fee of 25% of the increased value secured by the attorneys and proof of the reasonableness of this percentage was made at the hearing. The award of attorneys' fees was reasonable under these facts and necessary to make the landowners whole.

Accordingly, the $68,000 judgment in favor of the landowners is affirmed. The denial of necessary expenses of litigation pursuant to section 93-9921.1, R.C.M. 1947, is vacated and necessary expenses of litigation are fixed and allowed in the total sum of $19,300.50 as requested by the landowners.

_____
Justice

- 10 -

We concur:

_____
    Chief Justice

_Wesley Castles_____

_oy. Conway Harrison_____

_Gene B Daly_____
    Justices