No. 14517

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

THE STATE OF MONTANA, ACTING BY AND
THROUGH STATE HIGHWAY COMMISSION OF THE
STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ADELINE DONNES,

Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judcial District,
              Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

    For Appellant:

        M. Gene McLatchy, Highway Legal Dept., Helena, Montana

    For Respondent:

        Peterson and Hunt, Billings, Montana

---

Submitted on briefs:  July 12, 1979

Decided:  APR 1 0 1980

Filed: APR 1 0 1980

Thomas J. Kearney
                                        Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Adeline Donnes, the owner of ranch land in Yellowstone County, appeals from a judgment of the Yellowstone County District Court, entered on the basis of a jury verdict awarding her $10,653.38 for land condemned by the State of Montana.

The landowner asks for a new trial on three grounds. She contends first, that the trial court erred in refusing her testimony as to the depreciation in value to the land remaining after the take; second, that the trial court erred in refusing her testimony as to an alleged comparable sale; and third, that the jury failed to award her damages for what she contends is a permanent impairment of the ranching operation. She argues alternatively for a remand, contending that she is entitled to recover attorney fees and expenses of litigation. We affirm the judgment of the trial court.

The ranch land involved was condemned to obtain property for a four-lane interstate highway. The highway project bisected the landowner's property from the west to the east, leaving the property connected by a livestock tube or tunnel. The landowner's property consists of approximately 1,435 acres and is used for a cow-calf ranching operation. The amount of land actually taken by the State was 80.3 acres. All previously existing stocktrails and other points of access to the portion of land lying to the north of the interstate were cut off by the highway project. In order to provide access from the property north of the interstate to the property south of the interstate, the State constructed a tunnel or livestock tube in one of the coulees. The interstate split the winter range into two parts, the north portion and the south portion. All of the water wells for the winter range were located on the south portion. All

-2-

of the land immediately to the north of the interstate was sealed off without any water for the livestock, necessitating the construction of a well on the north portion.

The landowner concedes that she was permitted to testify to the value of her land for the purposes it was then being used, but contends that the trial court should have permitted her to go an additional step and testify to the depreciated value of the ranch land after the condemnation. The landowner can, of course, testify as to the reasonable value of the land according to the uses it is then being put, but ownership alone does not qualify one to testify as to its value for other purposes. In such event the landowner must have some peculiar means of forming an intelligent and correct judgment as to the value of the property in question beyond what is presumed to be possessed by men generally. State Highway Commission v. Marsh (1974), 165 Mont. 198, 203, 527 P.2d 573, 575. The landowner contends that the trial court erred in not permitting her to testify to the resulting depreciation in value of the ranch caused by the taking of the 80.3 acres. We determine however, that in light of the landowner's own testimony, the ruling of the trial court was correct.

The landowner made an offer of proof to the effect that the depreciation of the property in total, based on the total cow-calf operation, was $40,000. In not permitting the landowner to testify as to this, the trial court ruled that she had failed to lay a proper foundation, but that if she could do so at any time during the trial, such testimony would be permitted. She offered no additional foundation.

It is clear that the landowner possessed no peculiar means of forming an intelligent and correct judgment as to

-3-

the value of the property beyond what is presumed to be possessed by men generally. She did not testify to the value of the remaining land after the take. She testified that she did not personally operate the ranch, but rather her lessee operated the ranch. Although she testified at length concerning solutions or cures to the problem created by the interstate dividing the ranch land, she was unable to estimate the necessary costs to make the corrections. Nor could she assign a monetary value to the effect of the change in operations, as it related to the total value of the ranch. Indeed, when asked her opinion as to the value of the remaining land after the take, she testified it was too difficult to give such an opinion and declined to do so. Under these circumstances, the ruling of the trial court was correct.

In 1962, the landowner purchased grazing land from the State, and she wanted to testify as to the price she paid for this land. However, the trial court refused her testimony, ruling that the 1962 purchase was not a comparable sale in relation to the land involved here that was being condemned by the State. The landowner offers no reasonable rationale as to why she should have been permitted to so testify, and we find none.

The third contention of the landowner is that she was entitled as an element of depreciation damages, to damages for permanent impairment of the ranching operation, but that the jury only allowed her the cost of a well on the north portion of the remaining land. Although permanent inter- ference with farming or ranching, as opposed to temporary interference or inconvenience to farming or ranching operations, is recognized as an element of compensation, Meagher Cty. Newland Creek Water Dist. v. Walter (1976), 169 Mont. 358, 364, 547 P.2d 850, 854, the facts here fully support the jury verdict.

-4-

The heart of the landowner's case consisted of the measures or methods needed to cure the problems created by splitting the land into a north and south portion, joined only by a tunnel. Witnesses for both sides testified at length concerning the effect of the construction of the interstate on the cow-calf operation, but little evidence exists as to the permanent impairment of the ranching operation.

It cannot be doubted that the livestock tube constructed to provide access from the north portion to the south portion of the property created some inconvenience, but it did not, however, constitute a permanent impairment of the ranching operation. The land on the north side of the interstate was separated from the water wells on the south side, except for the access provided by the livestock tube. An expert witness for the landowner testified that after the construction of an electric water well on the north portion of the property, the value of the land on which it was constructed would be just as high as it was before the condemnation. Although an element of inconvenience surely exists, we cannot say that an element of permanent impairment exists. The facts of this case did not compel the jury to award damages for permanent impairment.

The final issue raised by the landowner is that she is entitled, under section 70-30-305, MCA, to an award of reasonable attorney fees and the costs of litigation in addition to the amount of the jury's verdict. By this statute, attorney fees and the expenses of litigation go to the landowner in addition to the amount of the jury verdict, if the landowner receives an award in excess of the State's final offer. The contention here is that the State's offer of $6,000, made prior to the date of the commissioner's value

-5-

hearing, must be the one used in comparing it to the jury's verdict of $10,653.38. This analysis, however ignores the statute and the case law governing the situation.

The right to recover necessary costs of litigation, as provided for by section 70-30-305, MCA, does not vest when the suit is filed, but vests only when the private property owner prevails, securing a higher verdict than the State's final offer. State, Department of Highways v. Olsen (1975), 166 Mont. 139, 146, 531 P.2d 1330, 1334. Under subsection 2 of this statute, to prevail means that the property owner must receive an award in excess of the final offer of the State. State By And Through Dept. of Highways v. Burlingame (1979), ____ Mont. ____, 597 P.2d 51, 55, 36 St.Rep. 603, 606.

The State is not confined, as the landowner contends, to the offer of $6,000 made before the commissioner's value hearing. Rather, the State may make an offer at any time before the trial starts. State, Department of Highways v. Olsen, supra, 166 Mont. at 146, 531 P.2d at 1334. The landowner rejected the offer of $6,000, but before the trial started, the State made its final offer of $20,100 which the landowner rejected. It is this final offer which must be measured against the jury verdict. Clearly, therefore, the landowner is not entitled to attorney fees and expenses of litigation. The State's offer exceeded the jury verdict.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

-6-

Mr. Justice John C. Sheehy dissenting:

This landowner was very much ill-used by the Yellowstone County jury. On its face, the award for the actual taking is unconscionable. She was awarded $4,815 for an actual taking of 80.3 acres. This averages approximately $60 per acre. If at anytime in 1971, the presumed year of taking, an 80 acre tract in the beautiful lands along the Yellowstone River east of Pompeii's Pillar were to be sold for $60 per acre, a line of eager purchasers a mile long would have formed to get in on the buy.

This unfair result is because of error that occurred in the course of the trial. The first error was the refusal of the District Court to allow a landowner to testify as to her estimate of the value of the property following the taking. She would have testified that the property she owned had been depreciated by virtue of the taking to the extent of $40,000. The District Court refused her testimony on the grounds that she needed "more specific foundation". In this, the District Court erred. The only foundation necessary for her testimony had been laid: she was the landowner, and under State Hwy. Comm'n. v. Marsh (1974), 165 Mont. 198, 203, 527 P.2d 573, the landowner's right to give an opinion as to reasonable value of his or her property, when the use before and after is the same, it is unqualified:

> "(1) The landowner on prima facie showing of ownership, may testify as to value, so long as:
>
> "a. His testimony is 'reasonable', and
>
> "b. The value testified to is for the uses to which he is putting the land . . ."

The basis of the court's refusal to allow this landowner to testify as to her opinion on value was not based on lack of "reasonable" testimony but rather that she had not laid a specific foundation. This was an insufficient ground on

-7-

which to deny her testimony.

The objections to her testimony on which the State relied are not sufficient to overcome her right as landowner to testify to the value of her property. The State's objection consisted of the fact that she was leasing the land instead of operating it herself, that she is a schoolteacher and mother living in Red Lodge, Montana, a substantial distance away from her property; that her testimony indicated because of the taking that some of her land would have to be overgrazed in order to continue as a cow-calf ranch operation; that the depreciation in value would be predicated upon impliedly negligent maintenance of the highway relative to erosion off of the tube underpassing the highway; that it would "ignore the landowner's duty to mitigate damage"; and that her estimate of value included cost-of-cure items. Those objections go merely to the weight of the testimony, and have no effect on her unqualified right under State Hwy. Comm'n. v. Marsh, supra, as a landowner to testify as to the value of her property. The fact that she would testify as to the value after the taking has no bearing. The eminent domain proceedings were commenced in 1971 when the complaint was filed. The highway itself was not constructed until 1974-1975. The cause was tried in May 1978, so she had at the time of trial at least three years of experience with her cow-calf operation and how the taking affected the value of her property.

In 1962, the defendant and her husband purchased a parcel of land from the State of Montana which was characterized as grazing land, and which was offered on competitive bids. She offered to testify as to the price they paid for that grazing land. On objection, the court refused to allow such testimony.

-8-

Even though the purchase was nine years prior to the taking in this case, the value placed upon the grazing land in a purchase by this landowner would have a direct bearing on the value to be considered by the jury of the land taken. When the State expert testified as to values, he used what he termed as comparable sales occurring early in the 1960's in the same area. Of course there was no objection on the part of the landowners counsel to this testimony. Obviously, refusal to allow this landowner to testify as to the value of land actually purchased by her in connection with this land as an indication of the value of this land in 1971 was again error.

This court attempted to straighten out the law with respect to the landowner's testimony of value in State Hwy. Comm'n. v. Marsh, supra. As a result of the majority opinion in this case, that problem is again beclouded with no guidance to courts or lawyers for future eminent domain proceedings.

In State Hwy. Comm'n. v. Marsh, supra, this Court reversed because the landowner was not allowed to testify as to the value of the property involved. The same result should have been obtained here. Were that so, it would not be necessary to consider the issue of attorney fees at this juncture. But since the majority here is sustaining what was done in the District Court with respect to the landowners testimony, the question of attorney fees becomes pertinent. In my opinion, the jury did enough damage to this landowner in awarding an insufficient amount for the taking. We do her further damage in not applying 1972 Mont. Const., Art. II, §29. In my dissent in State By and Through Dept. of Highways v. Burlingame (1979), ___ Mont. ____, 597 P.2d 51, 56, 36 St.Rep. 603, I pointed out that the only statutory definition of a "final offer" was that contained in section

70-30-305, MCA, which provided that the "final offer" had to be made within 30 days after the appeal had been perfected from the commissioner's award or report. In this case, the majority, relying on a subsequent offer, not a "final offer" as defined by the statute, made several months after the appeal had been perfected, denies attorney fees and deprives this landowner of just compensation. The result here is a gross inequity. In addition to having received an inadequate award, which is now approved, this landowner must in addition bear the burden of her attorney fees and costs. If this Court continues to refuse to apply properly a specific statute, where can a landowner turn?

I would reverse for a new trial.

_____
                    Justice

I agree with this dissent.

_____
                    Justice