Submitted on Briefs: January 31, 2018 Decided: June 5, 2018 As Corrected June 8, 2018
For Appellants Mountain Water: William T. Wagner, Stephen R. Brown, Kathleen L. DeSoto, Garlington, Lohn & Robinson, PLLP, Missoula, Montana, Michael Green, D. Wiley Barker, Crowley Fleck PLLP, Helena, Montana, Joe Conner, Adam Sanders, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Chattanooga, Tennessee
For Appellants Carlyle Infrastructure Partners, LP: William W. Mercer, Kyle Anne Gray, Brian Michael William Murphy, Holland & Hart LLP, Billings, Montana
For Appellee: Scott M. Stearns, Natasha Prinzing Jones, Randy Tanner, Boone Karlberg P.C., Missoula, Montana, William K. VanCanagan, Datsopoulos, MacDonald & Lind, P.C., Missoula, Montana, Harry Schneider, Jr., Perkins Coie LLP, Seattle, Washington
For Intervenor Montana Department of Transportation: David L. Ohler, Valerie D. Wilson, Special Assistant Attorneys General, Helena, Montana
Justice Jim Rice delivered the Opinion of the Court.
***424 ¶1 This is another appeal concerning the proceeding initiated by the City of Missoula (City) to condemn the water system serving the City, previously owned by Mountain Water Company (Mountain Water) and its upstream holding company, Carlyle Infrastructure Partners, LP (Carlyle) (collectively, Property Owners). Property Owners appeal the District Court's orders resolving their claims for attorney and expert fees. The City cross appeals. We address the following issues:
1. Did the District Court err by denying the facial and as-applied constitutional challenges to the definition under § 70-30-306, MCA, ***425 of the "necessary expenses of litigation" a prevailing party is constitutionally authorized to obtain, as the "customary" rate for attorneys and experts "in the county in which the trial is held?"
2. Did the District Court err by determining that Carlyle is a prevailing party and thus entitled to recover litigation expenses?
3. Did the District Court err in awarding attorneys' fees for out-of-state attorneys?
We affirm in part, reverse in part, and remand for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
¶2 In January 2014, the City made a final written offer of $50 million to purchase the water system, which was rejected by Property Owners. In February 2014, the City's Mayor made a public presentation introducing the legal team that would handle the City's condemnation lawsuit, which included specialized legal counsel from Seattle, Portland, and Spokane, and experts from New York, Seattle, and Minneapolis. Two Missoula law firms were also added to the City's legal team. In the City's pro hac vice motion, it stated "the City and its Montana counsel require the assistance and resources of a larger firm to prosecute this action." Likewise, Carlyle stated its intention to hire "the most qualified lawyers," and Property Owners ultimately retained attorneys from Denver, Chattanooga, Billings, and Missoula. The parties acknowledge that specialized, out-of-town legal counsel and experts charge higher rates than is customary in Missoula County.
¶3 In April 2014, the City initiated condemnation proceedings against Mountain Water and Carlyle. Carlyle filed a motion to dismiss, and later a motion for summary judgment, seeking dismissal as a party on the ground it was not the owner of the assets for which condemnation was sought. Carlyle argued the action should be prosecuted only against its subsidiary, Mountain Water. The *689 City opposed the motion, arguing that Carlyle, as the ultimate owner who made the integral decisions regarding the water system and sale, was a proper party to the action. The District Court denied the motions, ruling the City had sufficiently alleged that Carlyle was an owner and thus a proper party to the action.
¶4 In August 2014, the District Court issued a scheduling order that gave the parties six months to complete their discovery and pre-trial filings, and scheduled a trial date shortly thereafter. The parties acknowledge that the litigation schedule was demanding, even for the large legal teams employed by both sides. The District Court recognized that the abbreviated time before trial was "undoubtedly demanding and difficult." Ultimately, nearly 450,000 pages of discovery ***426 were exchanged, over 100 trial witnesses were identified, and 47 depositions were taken at locations across the country.
¶5 After a three-week bench trial, the District Court entered a preliminary condemnation order in favor of the City, which this Court affirmed. City of Missoula v. Mountain Water Co. , 2016 MT 183, ¶ 103, 384 Mont. 193, 378 P.3d 1113. In the proceeding before the Condemnation Commissioners, Mountain Water sought compensation for the value of the water system, and Carlyle sought severance damages for unfunded pension liabilities. In November 2015, the Condemnation Commissioners determined the value of the water system was $88.6 million, awarding the entire amount to Mountain Water, and awarded no damages to Carlyle.
¶6 Because the value determined by the Commissioners was higher than the City's final offer of $50 million, Property Owners moved for reimbursement of their litigation expenses, arguing they were prevailing parties. Property Owners argued § 70-30-306(2) and (3), MCA, which cap reimbursement for attorney and expert fees to the customary rate in the county where the case is tried, is unconstitutional, both facially and as-applied. The City argued that Carlyle was not a prevailing party because it had received no damages from the Commissioners, that the statute is constitutional, and that Property Owners' expenses were largely unnecessary and poorly documented. In order to establish the necessity and reasonableness of their expenses, Property Owners sought to discover the City's legal bills for purposes of context and comparison.
¶7 The District Court held Mountain Water and Carlyle were both prevailing parties with a right to be reimbursed for their necessary litigation expenses. The District Court precluded discovery of the City's litigation costs, finding them irrelevant to whether Property Owners met the requirements under §§ 70-30-305 and -306, MCA, for compensation of their own litigation expenses, but received testimonial evidence of the rates charged by the City's Missoula counsel in determining the statutory cap to be set for Property Owners' fees. The District Court found the statute constitutional facially and as-applied, and imposed a Missoula County customary rate on all hours billed by Property Owners' attorneys and experts.[1] The District Court further ***427 reduced the expense claim by 25% for Mountain Water and 35% for Carlyle, citing deficiencies in their billing records and concluding that "use of out of state counsel, overstaffing and duplication of effort result[ed] in attorney's fees that are not reasonable and necessary."[2] Consequently, the District Court reduced the approximately $7 million claimed by Mountain Water and Carlyle for attorney and expert fees to just over $3.9 million. Mountain Water was awarded approximately $1.8 million in attorney fees and $1 million in expenses, and Carlyle was awarded approximately $900,000 in attorney fees and $223,000 in expenses. *690 ¶8 Property Owners appeal, raising the District Court's denial of their constitutional challenges to the statute. In response to their filing of a notice of constitutional challenge, the Montana Department of Transportation intervened on behalf of the Attorney General. The City cross appeals.
STANDARD OF REVIEW
¶9 This Court exercises plenary review of constitutional issues. Mont. Cannabis Indus. Ass'n v. State , 2016 MT 44, ¶ 12, 382 Mont. 256, 368 P.3d 1131 (citations omitted). We review a district court's rulings on discovery matters for an abuse of discretion. Draggin' Y Cattle Co. v. Addink , 2013 MT 319, ¶ 17, 372 Mont. 334, 312 P.3d 451 (citations omitted). We review a district court's determination of whether a property owner prevailed in a condemnation action for abuse of discretion. Wohl v. City of Missoula , 2014 MT 310, ¶ 12, 377 Mont. 148, 339 P.3d 58 ( Wohl II ) (citations omitted). If legal authority exists to award attorneys' fees, we review a district court's grant or denial of fees for abuse of discretion. Sullivan v. Cherewick , 2017 MT 38, ¶ 10, 386 Mont. 350, 391 P.3d 62 (citations omitted). A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason, resulting in substantial injustice. Wohl II , ¶ 12 (citations omitted).
DISCUSSION
¶10 1. Did the District Court err by denying the facial and as-applied constitutional challenges to the definition under § 70-30-306, MCA, of ***428 the "necessary expenses of litigation" a prevailing party is constitutionally authorized to obtain, as the "customary" rate for attorneys and experts "in the county in which the trial is held?"
¶11 The parties' arguments over the validity of the statute begin with whether Article II, Section 29 of the Montana Constitution is self-executing, or whether it requires legislative implementation. Article II, Section 29 provides:
Eminent Domain. Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner. In the event of litigation, just compensation shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails.
"To determine whether the provision is self-executing, we ask whether the Constitution addresses the language to the courts or to the Legislature.... If addressed to the Legislature, the provision is non-self-executing; if addressed to the courts, it is self-executing." Columbia Falls Elem. Sch. Dist. No. 6 v. State , 2005 MT 69, ¶ 16, 326 Mont. 304, 109 P.3d 257 (citing State ex rel. Stafford v. Fox-Great Falls Theatre Corp. , 114 Mont. 52, 73, 132 P.2d 689, 700 (1942) ("A provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated in order to render it operative.") (citations omitted) ). Property Owners argue the provision is self-executing, while the City argues it is not, "because, while it allows a condemnee to recovery 'necessary' expenses, it provides no guidance or measure as to what constitutes 'necessary.' "
¶12 Article II, Section 29 is addressed to the courts. "Just compensation" for property taken for public use must be "made to or paid into court for the owner." The right to just compensation to a prevailing property owner includes "necessary expenses of litigation to be awarded by the court." It is the task of the courts to determine just compensation when disputed, including the necessary expenses of litigation. While Article II, Section 29, does not define "necessary," legislative action is not required to understand and implement the term. Courts routinely apply terms such as "necessary" in the course of their duties. As such, the provision is self-executing and requires no further legislative action.
¶13 However, as the City notes, even when a constitutional provision is self-executing, the Legislature may pass "legislation for the better protection of the right secured, or legislation in furtherance of the purposes, or *691 of the enforcement, of the provision." Gen. Agric. Corp. v. Moore , 166 Mont. 510, 514, 534 P.2d 859, 862 (1975) (citations ***429 omitted). Thus, "[w]hile the legislature is free to pass laws implementing constitutional provisions, its interpretations and restrictions will not be elevated over the protections found within the Constitution," which is a question we consider here. In re Lacy , 239 Mont. 321, 325, 780 P.2d 186, 188 (1989).
¶14 The Legislature has defined "[n]ecessary expenses of litigation" in this context to mean "reasonable and necessary attorney fees, expert witness fees, exhibit costs, and court costs." Section 70-30-306(1), MCA. Further, the Legislature has limited or capped these fees based upon the "customary" rates charged in the county in which the condemnation trial is held:
(2) Reasonable and necessary attorney fees are the customary hourly rates for an attorney's services in the county in which the trial is held. Reasonable and necessary attorney fees must be computed on an hourly basis and may not be computed on the basis of any contingent fee contract.
(3) Reasonable and necessary expert witness fees may not exceed the customary rate for the services of a witness of that expertise in the county in which the trial is held.
Section 70-30-306, MCA. These caps are challenged here. We have previously held that the term "customary hourly rates" requires "that 'reasonable and necessary attorney fees' are to be computed in a condemnation case based on hourly rates typical or common for a non-specific attorney's services in the county in which the trial is held." State v. Am. Bank of Mont. , 2008 MT 362, ¶ 14, 346 Mont. 405, 195 P.3d 844 ( American Bank I ). In American Bank I , ¶ 19, no constitutional challenge was made to § 70-30-306, MCA.
¶15 Property Owners contend the limits upon attorney and expert fees imposed by § 70-30-306, MCA, to the customary rates in the county in which the condemnation trial is held, violates their constitutional right to just compensation. While Property Owners raised both facial and as-applied challenges to the statute in the District Court, their appellate arguments fail to clearly delineate the two, and conceptually weave back and forth between the challenges. The analyses for these challenges are different, Mont. Cannabis Indus. Ass'n , ¶ 14 (citations omitted), and, thus, we take them up in turn.
Facial challenge
¶16 Property Owners argue that the capping of fees under § 70-30-306, MCA, to customary rates in the county facially violates the constitutional right of a prevailing property owner under Article II, Section 29, to recover necessary litigation expenses. They further argue that the clear intent of the Framers was to "award[ ] prevailing parties ***430 their actual litigation expenses," (emphasis in original) citing constitutional convention transcripts. They assert that "no reading" of Article II, Section 29, "would allow the condemnor (via the Legislature) to impose an artificial ceiling on the award of fees unrelated to the litigation expenses actually incurred," and that the statute thus "infringes on their constitutional right to full compensation...." They argue that the right to reimbursement, located within the Constitution's Declaration of Rights, is a fundamental right requiring the application of strict scrutiny review of the statute.
¶17 We first note that Property Owners' arguments in support of their claim to expenses "actually incurred" misapply Article II, Section 29, by attempting to link "necessary expenses of litigation" found in the second sentence with "the full extent of the loss" found in the first sentence of the provision. These sentences embody distinct concepts. In the first sentence, the phrase "just compensation to the full extent of the loss" refers to the "[p]rivate property" taken or damaged for public use, and such compensation must be made to, or paid into court for, the owner. Payment of this compensation may or may not require litigation. The second sentence provides that, "[i]n the event of litigation," an owner who prevails is entitled to, in addition to payment for the full loss of the property taken or damaged, "necessary expenses of litigation" as part of "just compensation." See K & R P'ship v. City of Whitefish , 2008 MT 228, ¶ 52, 344 Mont. 336, 189 P.3d 593 ("The only requirement for an award of litigation *692 expenses is that the condemnee prevail by obtaining a judgment in excess of the condemnor's pre-trial offer") (emphasis added) (citations omitted). Under the plain language of the provision, Property Owners are not entitled, as they argue, to reimbursement of the "full extent" of their litigation expenses, or the expenses they "actually incurred," but, rather, only the "necessary expenses of litigation" as determined "by the court." See , e.g. , State by Dep't of Highways v. Helehan , 186 Mont. 286, 289, 607 P.2d 537, 538 (1980) ("The award of attorney's fees in a condemnation case.... is only authorized after notice and a hearing before the District Court.... the amount to be paid is not decided by the defendant in a court condemnation action, but by the District Court."). An owner's "actually incurred" expenses may inform a court's determination of what is "necessary," but do not control it. We agree with the District Court's stated disagreement with the proposition that " 'reasonable and necessary' is synonymous with whatever a client will pay without balking."
¶18 This conclusion is not contrary to the intentions expressed by the delegates to the Constitutional Convention. Property Owners quote a ***431 delegate's statement that, "[t]he committee intends, by 'necessary expenses of litigation,' all costs including appraiser's fees, attorney fees and court costs." Montana Constitutional Convention, Verbatim Transcript, March 9, 1972, p. 1825-26 (emphasis added). While it is unnecessary here to consult the convention transcripts, as we have determined the meaning of Article II, Section 29 from its plain language, see Keller v. Smith , 170 Mont. 399, 405, 553 P.2d 1002, 1006 (1976), the words "all costs" in the quote is a reference to all categories of costs, as evident by the language that follows, "... including appraiser's fees, attorney fees and court costs." Had the delegates intended for prevailing owners to be reimbursed for all "expenses of litigation" actually incurred, they would not have qualified the term with the word "necessary."
¶19 Property Owners further argue that this interpretation of Article II, Section 29, fails to make them whole and deprives them of the "net recovery" referenced in our opinions. See K & R P'ship , ¶ 51 (citing State Dept. of Highways v. Olsen , 166 Mont. 139, 148, 531 P.2d 1330, 1335 (1975) ( Article II, Section 29"make[s] the landowner whole ... to the extent that the ... judgment ... would be a 'net recovery' ... where the landowner prevailed.") ). However, our holdings have never suggested making a land owner whole will result in a net recovery that includes reimbursement of unnecessary litigation expenses. Property Owners' claim to all litigation expenses "actually incurred" is simply inconsistent with the plain language of Article II, Section 29, and fails as a facial challenge.
¶20 Resolution of this contention, which is the only basis on which Property Owners challenge the District Court's percentage reduction of their expense claim for failing, by inadequate recordkeeping and duplication, to be "reasonable and necessary," leads us to affirm these reductions. The District Court conducted the process contemplated by Article II, Section 29, to determine the "necessary expenses of litigation to be awarded by the court," and we affirm this part of its orders.
¶21 Turning to the remainder of Property Owners' facial challenge to § 70-30-306, MCA, including the limitation to "customary" rates in the county of trial, we have held that a facial challenge is a "difficult" task, requiring the challenger to demonstrate that "no set of circumstances exists under which the challenged sections would be valid...." Mont. Cannabis Indus. Ass'n , ¶ 14 (brackets and citations omitted). In other words, it must be demonstrated "that the law is unconstitutional in all of its applications." Mont. Cannabis Indus. Ass'n , ¶ 14 (citations omitted). Statutes are presumed constitutional, and the challenger ***432 bears the burden of proving a conflict beyond a reasonable doubt. Mont. Cannabis Indus. Ass'n , ¶ 12. Facial challenges do not depend on the facts of a particular case. Citizens for a Better Flathead v. Bd. of Cty. Comm'rs , 2016 MT 325, ¶ 45, 385 Mont. 505, 386 P.3d 567 (citations omitted); see also , e.g. , Mont. Envtl. Info. Ctr. v. Dep't of Envtl. Quality , 1999 MT 248, ¶ 80, 296 Mont. 207, 988 P.2d 1236 ; *693 Ap, Inc. v. Mont. Dep't of Revenue , 2000 MT 160, ¶¶ 27-28, 300 Mont. 233, 4 P.3d 5 ; Roosevelt v. Mont. Dep't of Revenue , 1999 MT 30, ¶¶ 51-52, 293 Mont. 240, 975 P.2d 295. A statute found to be facially unconstitutional cannot be enforced under any circumstances. Citizens for a Better Flathead , ¶ 45 (citations omitted); see also , e.g. , Mont. Envtl. Info. Ctr. , ¶ 80 ; Ap, Inc. , ¶¶ 27-28 ; Roosevelt , ¶¶ 51-52.
¶22 To prevail on this claim, Property Owners must establish that no application of the statute can comport with Article II, Section 29. They fail to carry this difficult burden and, beyond their arguments discussed above, make little or no effort to do so. A condemnation case could involve a minor property for which the owner retains a local attorney and a local expert, for whom "customary" rates in the county of trial would provide an appropriate level of compensation upon prevailing, even if the "necessary" amount of the fees is disputed. Indeed, cases involving significant properties are so handled. In these scenarios, the statute could be constitutionally applied, defeating a facial challenge.
¶23 The City and intervenor Montana Department of Transportation argue vigorously that the right to reimbursement of litigation expenses is not a fundamental right for which strict scrutiny of § 70-30-306, MCA, is required. However, given our holding, we need not address the level of scrutiny applicable to the challenge. Under any level of scrutiny, the Property Owners have not, by their arguments here, established that the statute is either facially inconsistent with Article II, Section 29, or that it is "unconstitutional in all of its applications." Mont. Cannabis Indus. Ass'n , ¶ 14.
As-applied challenge
¶24 As mentioned, the District Court, in addition to imposing a percentage reduction of Property Owners' litigation expense claims on "reasonable and necessary" grounds, also reduced the claim by applying the caps imposed by § 70-30-306(2) and (3), MCA, on the rate of fees charged by Property Owners' attorneys and experts, limiting reimbursement to the "customary" rates in Missoula County, which were significantly lower than the actual fees charged to Property Owners.
***433 ¶25 Property Owners argue that the statutory caps, as applied to them in this case, violate their right under Article II, Section 29, to reimbursement of their "necessary expenses of litigation" as part of just compensation. An as-applied challenge alleges that a particular application of a statute is unconstitutional and depends on the facts of a particular case. Citizens for a Better Flathead , ¶ 45 (citations omitted); see also , e.g. , Mont. Envtl. Info. Ctr. , ¶ 80; Ap, Inc. , ¶¶ 27-28 ; Roosevelt , ¶¶ 51-52. When a court holds a statute unconstitutional as applied to particular facts, the statute may be enforceable in different circumstances. Citizens for a Better Flathead , ¶ 45 (citations omitted); see also , e.g. , Mont. Envtl. Info. Ctr. , ¶ 80 ; Ap, Inc. , ¶¶ 27-28 ; Roosevelt , ¶¶ 51-52.
¶26 Property Owners argue that the caps not only imposed reimbursement rates that were substantially lower than their actual rates, but did so arbitrarily without "an assessment of the actual necessity of the litigation expenses" they incurred, by what they deem are "artificial limitations." Property Owners contend that the unique circumstances of this case, including the complex size and nature of the asset being condemned, the City's approach in prosecuting the case using out-of-state lawyers and experts with specialties in the field, the large amount of discovery, and the District Court's imposition of a tight trial schedule made it "necessary" for them, in order to properly defend the action, to consult and hire attorneys and experts who charged rates above the customary rate within the county.
¶27 At the center of Property Owners' as-applied challenge to the statutory caps, and of their demonstration of necessity, was a comparison of the costs of their legal defense efforts with the costs of the City's effort in prosecuting the action. Property Owners sought to discover information concerning the City's hiring of out-of-state counsel and the fees that were charged to represent the City in the action. However, despite acknowledging cases wherein "a comparison of rates provide[ ] a helpful guide in determining *694 whether similarly high rates and hours requested were reasonable," the District Court prohibited such discovery by Property Owners, stating "it is up to [Property Owners] to construct their argument for costs and fees ... without shifting the burden to the City." The District Court thereafter held that Property Owners had failed to carry their evidentiary burden on summary judgment, reasoning they had failed to prove that "local counsel was either unwilling or lacked the special expertise to litigate the case.... Missoula has a large supply of skilled attorneys who routinely handle complex cases, including eminent domain cases."
¶28 On appeal, Property Owners argue, "[l]ike the City, the Property ***434 Owners recognized that they, too, needed the experience and resources provided by large firms outside Missoula." Citing newspaper articles speculating on the City's legal bills, they contend that they have "good reason to believe" that the City's expenses equated with or exceeded their claimed litigation expenses.
¶29 We have described the requirement that prevailing property owners be awarded their "necessary expenses of litigation" as a "constitutional directive" which "cannot be frustrated" by statute. Olsen , 166 Mont. at 147, 531 P.2d at 1334 ; see also Wohl v. City of Missoula , 2013 MT 46, ¶ 61, 369 Mont. 108, 300 P.3d 1119 ( Wohl I ). Thus, the critical question is whether it was "necessary" for Property Owners to incur attorney and expert fees above the customary rate within the county. In a uniquely complex Montana case, wherein out-of-state counsel played prominent roles in both prosecuting and defending the action, we think Property Owners were entitled to limited discovery about a relevant consideration to their necessity claim-the approach taken by the City to prosecute the action and the corresponding expenses incurred by the City. Property Owners' defense of the litigation was framed, first, by the approach taken by the City in prosecuting the litigation. Indeed, Property Owners lost their initial lead counsel, a Montana firm, several months after the litigation began, and made the decision, with a view toward the City's efforts, to substitute an out-of-state firm as lead counsel. Few other sources or cases, besides this one, can provide a satisfactory comparison or context for the defense decisions made, and the expenses incurred, by Property Owners. While we take no position on the ultimate validity of an as-applied challenge, we conclude Property Owners were entitled to gather this relevant information in an effort to lay an evidentiary foundation in this unique case, and that the District Court's denial of that opportunity was an abuse of discretion. We emphasize that this does not call for a discovery "fishing expedition" by Property Owners, but is a narrow opportunity to obtain basic information about the City's legal costs, including the specialties or expertise of the outside counsel retained, and the rates and cost of representation related to the condemnation proceeding.
¶30 While we have not defined "necessary," we have extensively defined "reasonable" in the context of litigation expenses, which, though not conclusive, would be instructive in determining what is "necessary." In American Bank I , ¶ 14, we concluded that the non-exclusive, seven-factor test, sometimes referred to as the "
***435 Forrester factors,"[3] was inapplicable to the determination of fees under § 70-30-306, MCA, because compliance with the statute required consideration of only the customary charges in the county of trial. However, in view of the constitutional challenge here, these factors would be relevant considerations in the determination of necessary expenses and of the ultimate legal conclusion of whether the statute works to inhibit the constitutional award of such expenses. This ruling does not overturn the rejection of the Forrester factors by American Bank I in cases involving application of § 70-30-306, MCA, but merely permits their use in making an as-applied constitutional challenge to the statute.
¶31 Again, the parties argue over what level of scrutiny to apply to the statute. However, given that reimbursement of "necessary" expenses is a "constitutional directive,"
*695 Olsen , 166 Mont. at 147, 531 P.2d at 1334, a limitation upon reimbursement of litigation expenses proven to be necessary would violate Article II, Section 29, under any level of scrutiny.
¶32 2. Did the District Court err by determining that Carlyle is a prevailing party and entitled to recover litigation expenses?
¶33 The Legislature has defined when a private property owner prevails:
In the event of litigation and when the condemnee prevails either by the court not allowing condemnation or by the condemnee receiving an award in excess of the final written offer of the condemnor that was rejected ... the court shall award necessary expenses of litigation to the condemnee.
Section 70-30-305(2), MCA.
¶34 On cross appeal, the City argues that because the Commissioners awarded Carlyle no damages, Carlyle is not a prevailing party. We cannot conclude the District Court's determination that Carlyle is a prevailing party entitled to litigation expenses is arbitrarily, lacks conscientious judgment, or exceeds the bounds of reason. The District Court reasoned that Carlyle was a prevailing property owner under the statute because the City had argued, and the District Court determined, that Carlyle was the ultimate property owner and thus should not be dismissed from the action; that Carlyle itself received a final written offer to purchase the water system from the City; and ***436 that the final offer of $50 million was less than the $88.6 million awarded. The District Court reasoned that the Commissioners directing the award to Mountain Water as opposed to Carlyle was inconsequential, because at trial, Carlyle allowed its subsidiary Mountain Water to argue for the value of the assets, while Carlyle only argued for severance damages related to unfunded pensions. The District Court reasoned that Carlyle not prevailing on its severance damages claim does not diminish the fact that, through its subsidiary, Carlyle prevailed on the valuation claim. The District Court did not abuse its discretion.
¶35 3. Did the District Court err in awarding attorneys' fees for out-of-state attorneys?
¶36 On cross appeal, the City argues that Property Owners are not entitled to fees for their out-of-state attorneys, "pro hac vice or otherwise," citing § 37-61-215(1), MCA :
It is unlawful for any court within this state to allow attorney fees in any action or proceeding before the court in which attorney fees are allowed by law to either party to an action or proceeding when the party is represented by anyone other than a duly admitted or licensed attorney at law .
(Emphasis added.) Originally, we interpreted this language to mean that an attorney who is not licensed in Montana may not recover attorney's fees. Vaill v. N. Pac. Ry. Co. , 66 Mont. 301, 304-05, 213 P. 446, 447-48 (1923). However, we subsequently overruled this holding, noting:
An opposing view [from Vaill ] has evolved ... wherein it was held that an attorney licensed in one state may recover for services rendered in a state in which he is not duly licensed, if he initially discloses that fact to his client and further informs him of the necessity to associate with local counsel. This is a rule which, in all fairness, we feel impelled to adopt. We find that such an interpretation is better suited to the modern practice of law and in the interests of promoting comity between the states. Such a rule is particularly appropriate in cases such as the instant one, where the attorney in question is a member in good standing of the California Bar. Under these circumstances, neither the spirit nor the intent of [ § 37-61-215(1), MCA ], regulating the right to practice law in this state, has been violated.
Winer v. Jonal Corp. , 169 Mont. 247, 252, 545 P.2d 1094, 1097 (1976). Thus, in Winer , we broadly approved reimbursement of fees for an out-of-state attorney (there, from California), noting such a rule was "particularly appropriate" where the subject attorney was a member ***437 in good standing of the California Bar. *696 Winer , 169 Mont. at 252, 545 P.2d at 1097.[4]
¶37 The City argues that Property Owners are not entitled to out-of-state attorneys' fees because allowing "dozens of out-of-state attorneys to work in the shadows on a Montana case and make claims for attorney's fees" does not fall within the spirit of the law. However, we cannot conclude the District Court made a legal error or otherwise acted arbitrarily, lacked conscientious judgment, or exceeded the bounds of reason when it applied Winer , the controlling precedent here, which clearly provides that, when certain requirements not here contested are met, attorneys' fees can be awarded for out-of-state counsel.
CONCLUSION
¶38 We affirm the denial of Property Owners' facial constitutional challenge to § 70-30-306, MCA, and accordingly, their claim to expenses "actually incurred" in the litigation. Given this sole basis for their challenge to the District Court's percentage reductions of their claims for inadequate bookkeeping and duplication, we affirm the District Court's reductions and its determination of "necessary" expenses in this regard. Regarding Property Owners' as-applied constitutional challenge to § 70-30-306, MCA, we reverse and remand for further proceedings to permit Property Owners to conduct limited discovery upon which to lay the factual foundation for their claim.
¶39 Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.
We concur:
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.

The statute was declared unconstitutional in State v. Am. Bank of Mont. , No. DV 04-474(B) (11th Judicial Dist. Mont. Oct. 25, 2012), which this Court overturned on other grounds in a memorandum opinion, State v. Am. Bank of Mont. , No. DA 13-0072, 2013 MT 330N, 2013 WL 5929289, 2013 Mont. LEXIS 451 (American Bank II ).

The District Court did not hold that use of out-of-state counsel was per se unnecessary, but that Property Owners' legal coordination was poor and not well documented, resulting in attorney fees that "were not reasonable and necessary in producing work and in coordinating work within a large team."

Forrester v. Bos. & Mont. Consol. Copper & Silver Mining Co. , 29 Mont. 397, 409, 74 P. 1088, 1093 (1904) ; see also Chase v. Bearpaw Ranch Ass'n , 2006 MT 67, ¶ 38, 331 Mont. 421, 133 P.3d 190 (citations omitted).

Winer was decided prior to this Court's adoption of pro hac vice rules of admission in 1986, although, since 1895, pro hac vice admission had been governed by statute. There is no argument here that Winer conflicts with any of the pro hac vice rules.